# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MURRAY RUBINSTEIN, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RICHARD GONZALEZ and ABBVIE INC., ) <br> ) <br> Defendants. ) <br> ) | Case No. 14-cv-9465 <br><br> Honorable Robert M. Dow, Jr. <br><br> Magistrate Judge Young B. Kim |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DISCOVERY**

Robert J. Kopecky
Joshua Z. Rabinovitz, P.C.
Devon M. Largio
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
(312) 862-2200 (fax)

*Attorneys for Defendants*

**Table of Contents**

Preliminary Statement ................................................................................................................. 1

Background ................................................................................................................................. 2

Argument .................................................................................................................................... 6

I.  A Discovery Time Period of September 22, 2014 to October 14, 2014 Is Relevant and Proportional to the Needs of this Case. ...................................................................... 7

    A.  September 22, 2014 Is the Relevant Starting Date for Discovery in This Case. ................................................................................................................... 7

    B.  October 14, 2014 Is the Relevant Ending Date for Discovery in This Case. ....... 10

    C.  Plaintiffs' Lengthy Proposed Time Period Is Disproportionate to the Needs of This Case. ............................................................................................ 13

II. Discovery from AbbVie's Directors Is Neither Relevant nor Proportional to the Needs of this Case. ......................................................................................................... 14

Conclusion ................................................................................................................................ 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Control Data Corp. Sec. Litig.*,
  1988 WL 92085 (D. Minn. Feb. 22, 1988) ............................................................................... 11

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
  2012 WL 1068761 (N.D. Ill. Mar. 29, 2012) ............................................................................ 12

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
  2012 WL 2866463 (N.D. Ill. July 10, 2012) ............................................................... 9, 11, 15

*Higginbotham v. Baxter Int'l. Inc.*,
  495 F.3d 753 (7th Cir. 2007) .................................................................................................... 12

*Lindell v. McCaughtry*,
  115 F. App'x 872, 876 (7th Cir. 2004) ...................................................................................... 6

*Michaels v. Michaels*,
  767 F.2d 1185 (7th Cir. 1985) .................................................................................................. 11

*Miller UK Ltd. v. Caterpillar, Inc.*,
  17 F. Supp. 3d 711 (N.D. Ill. 2014) ........................................................................................... 8

*MSTG, Inc. v. AT&T Mobility LLC*,
  2011 WL 221771 (N.D. Ill. Jan. 20, 2011) ................................................................................ 6

*SEC v. Holschuh*,
  694 F.2d 130 (7th Cir. 1982) .................................................................................................... 12

*Southport Bank v. Miles*,
  2016 WL 7366885 (N.D. Ill. Dec. 19, 2016) ........................................................................ 6, 13

*Sroga v. Preckwinkle*,
  2016 WL 1043427 (N.D. Ill. Mar. 16, 2016) ............................................................................. 8

*Stephens v. City of Chicago*,
  203 F.R.D. 353 (N.D. Ill. 2001) ......................................................................................... 10, 11

*West v. Miller*,
  2006 WL 2349988 (N.D. Ill. Aug. 11, 2006) ........................................................................ 6, 12

*Ye v. Cliff Veissman, Inc.*,
  2016 WL 950948 (N.D. Ill. Mar. 7, 2016) ............................................................................... 13

**Statutes**

Private Securities Litigation Reform Act of 1995 ...........................................................................9

**Rules**

Federal Rule of Civil Procedure 26(a)(1) ......................................................................................4

Rule 26(b)(1)..............................................................................................................................6, 13

**Other Authorities**

H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730.........................................................................9

**Preliminary Statement**

Plaintiffs are wrong when they declare that this case "concerns the proposed and aborted merger of AbbVie and Shire plc in a tax inversion transaction." This case is only about the preparation and issuance of a September 29, 2014 communication from AbbVie's CEO to Shire employees—part of AbbVie's efforts to prepare to integrate the companies—and the impact of the Treasury Department's September 22, 2014 announcement on the Shire transaction at the time that communication was made.

But rather than tailoring their discovery requests to these events, Plaintiffs served broad discovery related to dismissed allegations and the months before and after the conduct related to their remaining claim. In their motion, Plaintiffs demand a document production from February 1, 2014 through November 21, 2014—nearly eight months before the Treasury Department indicated it would change the tax rules regarding inversion transactions and more than a month after AbbVie's board announced it would reconsider its support for the Shire transaction, which is what Plaintiffs alleged caused their loss.[1] Plaintiffs also seek discovery from outside directors who are not even alleged to have been involved with the lone remaining alleged misstatement. These requests are outside the scope of discovery permissible under the rules, and Plaintiffs' motion to compel should be denied.

---

[1] Although Plaintiffs do not specify which of their requests for production this time period would apply to, Defendants note that many of the categories of documents Defendants have agreed to produce are limited to documents about the Treasury Notice issued on September 22. (*See* Declaration of James Notis ("Notis Decl."), Ex. A at RFP Nos. 2, 3, 7, 8, 9, 12, 17, 18, 20, 21, and 22) To the extent Plaintiffs intend to seek additional substantive categories of documents other than those Defendants currently have agreed to produce, those arguments are not raised by Plaintiffs' present motion and Defendants do not address them here.

1

*First,* Plaintiffs have not met their burden to demonstrate that the pre-Treasury Notice discovery they seek is relevant, given that the issues here center on the impact of the September 22 Notice on the transaction. Indeed, documents regarding the impact of the Notice could not exist before the Notice was published. Discovery into the negotiation of the transaction is also not relevant, and Plaintiffs cannot attempt to rehabilitate dismissed allegations or expand the scope of the case by conducting a fishing expedition in hope of finding documents relevant to their dismissed claims. The same is true of Plaintiffs' demand for post-October 14, 2014 materials. Plaintiffs allege that the "truth" that Defendants supposedly concealed was revealed that day. What happened *after* that day has no bearing on Plaintiffs' remaining claim. But even if Plaintiffs had made a plausible showing of relevance, the burden associated with the several additional months of documents that would have to be reviewed outweighs any minimal relevance of the materials in Plaintiffs' broad time period; their request is simply not proportional to the needs of this case.

*Second,* Plaintiffs have not articulated how the outside directors' documents are relevant, given that Plaintiffs do not allege those directors had any role in the September 29 statement and their October 14 decision to reconsider their support for the transaction is not in dispute. In any case, because Defendant Gonzalez is a custodian whose documents will be collected for production, any relevant communications he had with the directors will already be produced. In light of any minimal relevance of their documents, invading these directors' privacy with collection of their *personal email* or, in some cases, invading other companies' privacy with collection of the directors' *non-AbbVie business email*, is not proportional to the needs of the narrow issues presented in this case.

**Background**

Plaintiffs first filed this action on November 25, 2014, bringing securities claims based on seven alleged misstatements regarding the Shire transaction. This Court dismissed Plaintiffs' original complaint in its entirety without prejudice. Plaintiffs then brought an amended complaint, narrowing their allegations to three purported misstatements. Two of the alleged misstatements related to AbbVie's rationales for initially agreeing to the transaction: (1) comments made by Gonzalez during a July 21, 2014 investor call regarding the rationales for the transaction, during which he explained that the "transaction has a significant, both strategic and financial, rationale" and that "[t]ax is clearly a benefit"; and (2) AbbVie's August 4, 2014 SEC Form S-4, which described the numerous strategic and financial benefits of the merger, including the tax benefits associated with reincorporating overseas. (Dkt. No. 38, Am. Compl. ¶¶ 41-42, 53-54) On March 10, 2017, this Court dismissed—for the second time—Plaintiffs' claims regarding these two purported misstatements from July and August 2014 about the rationale for the transaction, finding that Plaintiffs had not adequately alleged that these statements were false or misleading. (Dkt. No. 53, Mem. Op. at 15)

The final alleged misstatement occurred after the September 22, 2014 announcement that the Treasury Department would change the federal tax rules regarding inversion transactions. Specifically, on September 29, 2014, Gonzalez sent a letter to Shire employees, after meeting with them the previous week, in which he noted that he was "more energized than ever about our two companies coming together" and looked forward to continued integration planning between AbbVie and Shire. (*Id.* at ¶¶ 56, 59) Plaintiffs' amended complaint further alleged, with regard to the September 29 statement, that Gonzalez falsely offered continued enthusiasm for the transaction in his letter in an effort to "stave off an immediate $1.64 billion termination fee" and save a month of interest on those funds. (*Id.* at ¶¶ 60, 78) According to Plaintiffs, the truth came

3

out on October 14, 2014, when Gonzalez "revealed" that the tax impact of the transaction was of "critical importance to AbbVie and its Board." (*Id.* at ¶ 62)

The Court's motion to dismiss ruling allowed Plaintiffs to continue only on their claim relating to the September 29 letter. (*Id.*) However, the Court rejected Plaintiffs' scienter allegations that the September 29 statement was made with intent to defraud investors. (*Id.* at 20) Instead, the Court focused on the timing of the Notice and the likely ongoing nature of AbbVie's examination of the impact of the Notice on the transaction at the time of the letter. (*Id.* at 21 ("It is more than plausible that AbbVie began its detailed analysis as soon as Treasury issued the Notice—and that the analysis was ongoing when Gonzalez issued his statement on September 29—given AbbVie's prior statements (including the S-4 filing) recognizing that the tax benefits were one of the rationale[s] behind the merger."))

Thereafter, the parties exchanged Rule 26(a)(1) initial disclosures on April 19, 2017. Consistent with the Court's order limiting the case to the September 29 letter, Defendants' disclosures focused on the preparation of that letter, the analysis of the Notice, and AbbVie's ongoing integration efforts during the class period. (Notis Decl., Ex. C) By contrast, Plaintiffs' disclosures reached far beyond the September 29 letter and related issues. Plaintiffs indicated that the prosecution of their case may involve sixty-five individuals and entities associated with aspects of the Shire transaction from inception to termination, as well as documents on topics including AbbVie and Shire statements from June 20, 2014 through November 14, 2014. (Decl. of Devon M. Largio ("Largio Decl."), Ex. A)

Plaintiffs' twenty-five requests for production similarly seek broad discovery into nearly all aspects of the Shire negotiations and termination. For example, Plaintiffs have sought discovery on a number of topics wholly unrelated to the September 29 letter or the impact of the

4

Treasury Notice on the transaction, such as "all documents relating to the Combination that [AbbVie] considered prior to authorizing the Combination" and "all communications made, authorized or received by [AbbVie] relating to the termination fee" that was paid by operation of the merger agreement after the transaction was terminated. (Notis Decl., Ex. A at RFP Nos. 6, 15) The Requests also demand production from a broad time period: over nine and a half months spanning February 1, 2014 (approximately eight months before the Treasury Department's announcement and the letter from Gonzalez to Shire employees) through November 21, 2014 (over a month after the alleged disclosure of the "truth"). (*Id.* at 4) Thus, the scope of requested documents is far broader than Plaintiffs' remaining claim. (*See, e.g., id.* at RFP Nos. 1 and 8) ("All documents … relating to the "financial benefits" of the Combination"; "[a]ll communications between [AbbVie] and any financial advisor … or public relations firm … relating to the Combination or the Notice…"))

In their written responses, Defendants agreed to produce documents related to the preparation of the September 29 letter, AbbVie's ongoing integration plans for Shire, AbbVie's analysis of the Treasury Notice and its impact on the transaction, and communications with government regulators in the weeks after the Notice. (Notis Decl., Ex. B) For nearly all of Plaintiffs' requests, Defendants proposed a time period of September 22, 2014—the date of the Notice—through October 14, 2014—the date when AbbVie announced that its board would meet to reconsider its recommendation in support of the transaction. (*Id.*) Defendants also agreed to produce documents relating to the September 29, 2014 letter created in advance of the letter's issuance, *even if dated before September 22, 2014*. (*Id.* at RFP Nos. 10, 16) Defendants objected to a small number of requests in their entirety, including Plaintiffs' request for all outside directors'

5

communications, as overbroad, unduly burdensome, and seeking information not relevant or proportional to the needs of the case. (*See, e.g., id.* at RFP No. 23) [2]

## Argument

As Plaintiffs correctly note, Rule 26(b)(1) provides that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. (Pls. Br. at 6) However, "[d]espite the liberal breath of discovery allowed under the federal rules, the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant." *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006) (internal quotation omitted). Failure to make "a colorable initial showing as to relevance can doom a motion to compel"; thus, where the party seeking discovery does not make this initial relevance showing, the party cannot "shift the burden" to the opposing party to prove that the requested discovery is improper. *Id.*; *see also MSTG, Inc. v. AT&T Mobility LLC*, 2011 WL 221771, at *6 (N.D. Ill. Jan. 20, 2011) ("The burden in a motion to compel rests with the party seeking discovery to explain why the opposing party's responses are inadequate.").

Additionally, under the current rules, the scope of discovery is limited to matters that are not only non-privileged and relevant, but also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This analysis requires consideration of "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Southport Bank v. Miles*, 2016 WL 7366885, at *2 (N.D. Ill. Dec. 19, 2016); *see also Lindell v. McCaughtry*, 115 F. App'x 872, 876 (7th Cir. 2004) (a party does not have "an absolute right to everything that is relevant to [the] case").

---

[2] The parties have begun initial negotiations on search terms and custodians. (*See* Notis Decl. at Ex. H) However, after it became clear that Plaintiffs planned to press for discovery over a broad time period and from the directors, Defendants indicated that those issues would need to be resolved before negotiations continued, in order to ensure that discovery proceeded efficiently.

Here, Plaintiffs have not met their initial burden of showing that the discovery they seek will lead to the production of relevant information, nor that the discovery they seek is proportional to the needs of the case, for the reasons articulated below.

**I.      A Discovery Time Period of September 22, 2014 to October 14, 2014 Is Relevant and Proportional to the Needs of this Case.**

Defendants' proposed time period of September 22, 2014 to October 14, 2014 is the relevant and proportional time period for the basic production in this case, and Plaintiffs have not demonstrated otherwise. First, Plaintiffs have not articulated how discovery pre-dating the Treasury Notice could possibly be relevant to understanding its impact on the transaction. Second, Plaintiffs cannot establish the relevance of documents dated after Plaintiffs allege the "truth" about the supposed misstatement was disclosed. In addition, the burden on Defendants to review documents eight months before and two months after the Treasury Notice outweighs any minimal relevance of materials in Plaintiffs' broad proposed time period.

**A.      September 22, 2014 Is the Relevant Starting Date for Discovery in This Case.**

In their motion, Plaintiffs argue that they are entitled to discovery before September 22, 2014 so they can discover "what Defendants knew and when" in relation to the September 29 statement. (Pls. Br. at 9) But Plaintiffs fail to articulate how materials from this earlier time period are *relevant* to answering those questions.

Plaintiffs' only remaining claim relies on a theory that Gonzalez knew as of September 29, 2014 that the Shire transaction would not go forward *as a result of the changes announced in the September 22 Treasury Notice*. Indeed, Plaintiffs themselves allege that those changes caused the transaction to be terminated. (Am. Compl. ¶¶ 7, 65) It makes sense, then, that it was precisely this post-Notice time period the Court focused on when concluding that Plaintiffs had adequately pled scienter with respect to the September 29 letter and reasoning that "[i]t is more than plausible

7

that AbbVie *began* its detailed analysis as soon as Treasury issued the Notice [on September 22]—and that the analysis was ongoing when Gonzalez issued his statement on September 29." (Mem. Op. at 21 (emphasis added))

As a result, what is relevant is what analyses AbbVie conducted *after* the Treasury Notice, and what Gonzalez and any staff who helped him prepare the September 29 letter considered in preparing the letter. But documents relevant to the Notice or its impact on the transaction could not have existed *before* the date the Notice was issued on September 22, 2014.[3] The starting point for any inquiry into AbbVie's likelihood of continuing with the transaction in light of the tax changes announced in the Notice is the date of the Notice itself: September 22.

What is not relevant, however, is what happened with regard to the transaction prior to the Notice—that is, why AbbVie initially wanted to acquire Shire and its internal analysis of the various strategic and tax benefits that justified the transaction. There is no dispute that the tax benefits played a role in AbbVie's decision to acquire Shire. (*See, e.g.,* Am. Compl. at ¶¶ 29, 33, 42, 53) The Court's dismissal ruling agreed, noting AbbVie's various disclosures of the tax benefits of the deal and holding that "the Court cannot conclude that investors would be led to believe that the deal would go through regardless of changes to the tax rules." (Mem. Op. at 3-6, 16) Thus, pre-Treasury Notice discovery is not relevant to Plaintiffs' remaining claim.

Plaintiffs are not entitled to take discovery regarding their already-dismissed claims. *See, e.g., Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 728 (N.D. Ill. 2014) ("[I]t is proper to deny discovery that is relevant only to claims or defenses that have been stricken."); *Sroga v.*

---

[3] Recognizing that the September 29 letter is the crux of this case, Defendants have agreed to produce documents relating to the September 29 letter even if dated before September 22. Such documents might exist because the purpose of the September 29 letter was unrelated to the September 22 Treasury Notice.

*Preckwinkle*, 2016 WL 1043427, at *3 n.7 (N.D. Ill. Mar. 16, 2016) ("Discovery is limited to the claims that remain at issue after the motion to dismiss stage."). To the extent Plaintiffs are seeking broad discovery in hopes of rehabilitating their previously dismissed claims based on statements about the rationales for the Shire transaction, such a fishing expedition is not permissible under the discovery rules. *Hadley v. GateHouse Media Freeport Holdings, Inc.*, 2012 WL 2866463, at *2 n.3 (N.D. Ill. July 10, 2012) ("[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have.").

Moreover, allowing such discovery would be contrary to the goals of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a statute "prompted by significant evidence of abuse in private securities lawsuits." H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730, *31. In heightening the pleading requirements for securities fraud claims, Congress noted that one of the law's objectives was to "prevent 'fishing expedition' lawsuits." *Id.* at *37. Plaintiffs here failed to meet the PSLRA's pleading standard for their claims about pre-Treasury Notice statements, and their efforts to seek discovery on those dismissed claims are precisely the kind of "fishing expedition" the PSLRA was designed to prevent.

At bottom, Plaintiffs provide no cogent explanation for why documents going back to February 1, 2014 are relevant to their limited remaining claim about the September 29 letter. [4] Plaintiffs offer no insight into what those relevant documents might be, and they are not entitled

---

[4] Plaintiffs suggest that the Treasury Department "telegraphed" prior to September 22 that it planned to issue rules limiting the tax benefits of inversions. (Pls. Br. at 2) But all the Treasury Department said in August was that it was reviewing its options to possibly limit the tax benefits of inversions. (*See* Am. Compl. ¶ 52) Because the tax benefits were not "all or nothing," knowing that the tax benefits *might* change in some unspecified way would not allow AbbVie to perform any meaningful analysis. Nor can a statement made by the Treasury Department in August entitle Plaintiffs to discovery dating back to February—six months earlier.

to engage in a fishing expedition in the absence of some likelihood of identifying admissible evidence. *See, e.g., Stephens v. City of Chicago*, 203 F.R.D. 353, 355 (N.D. Ill. 2001) (denying motion to compel where discovery requests were "nothing more than fishing expeditions").

Defendants, therefore, are not—contrary to Plaintiffs' complaints—attempting to artificially define the scope of discovery by reference to the putative class period, and the cases Plaintiffs cite for this argument entirely miss the mark. (Pls. Br. at 7-11) Rather, Plaintiffs have failed to meet their burden to establish any basis for the relevance of documents before September 22, 2014—apart from documents relating to the September 29 letter, which Defendants have already agreed to produce—and this Court should therefore deny Plaintiffs' request to seek discovery during this pre-Notice time period. In any case, Defendants have not actually sought to limit discovery to the putative class period, given that the putative class period begins on September 29, 2014 and Defendants have offered to produce documents going back to September 22, the date of the Treasury Notice—and even earlier than that for documents that relate to the preparation of the September 29 letter.

### B. October 14, 2014 Is the Relevant Ending Date for Discovery in This Case.

Plaintiffs' allege that the so-called truth regarding the September 29 statement was revealed on October 14, 2014 (the last date of the proposed class period), when AbbVie announced that its board would meet to reconsider its recommendation to proceed with the transaction in light of the tax changes announced in the Treasury Notice. (Am. Compl. ¶¶ 9, 62) What happened after that date is irrelevant—once the "truth" has been revealed, there is nothing more to discover about AbbVie's analysis of the Notice or its impact on the transaction. Moreover, just as there is no dispute that tax benefits was one of the rationales for the transaction, there is also no dispute that (1) the board met on October 15, 2014 and decided to withdraw its recommendation for the

10

transaction, (*id.* ¶ 65); (2) on October 20, 2014, AbbVie and Shire announced that they had terminated the transaction, (Dkt. No. 58, Answer at ¶ 67); and (3) the transaction was terminated due to the impact of the Notice, (*id.* ¶ 65, 67). Therefore, the events that occurred after October 14 are not at issue in this case, and discovery into them is unwarranted. *See Stephens*, 203 F.R.D. at 355; *Hadley*, 2012 WL 2866463 at *2 n.3.

Contrary to Plaintiffs' assertions, Defendants' initial disclosures do not concede that post-October 14 discovery is relevant. (Pls. Br. at 11) Defendants disclosed that they may rely on "[d]ocuments regarding AbbVie's agreement to terminate the Shire combination," which relate to AbbVie's (undisputed) rationale for ultimately agreeing to terminate the transaction (also undisputed). All such relevant documents would have been prepared by management in the weeks leading up to October 14, 2014.

Further, Plaintiffs' arguments that materials beyond October 14 may nonetheless be relevant to scienter are unavailing. Plaintiffs argue that such discovery could "expose efforts to conceal fraud occurring during the class period or to avoid detection thereafter." (Pls. Br. at 10) However, Plaintiffs' arguments regarding intentional fraud and efforts to conceal it are not only wholly speculative, they are also misplaced because the Court has already found that Plaintiffs failed to plead intentional misconduct. (Mem. Op. at 20 ("[T]he Court concludes that Plaintiffs' allegations are sufficient to give rise to a strong inference that Gonzalez' September 29, 2014 letter was sent with a reckless disregard of the truth, but not with the intent to deceive, manipulate, or defraud.")) Thus, this case is not about an alleged long-term fraudulent scheme, as in the cases cited by Plaintiffs. *See, e.g., Michaels v. Michaels*, 767 F.2d 1185 (7th Cir. 1985) (scheme of misstatements and withheld information that culminated in purchase of the plaintiff's shares); *In re Control Data Corp. Sec. Litig.*, 1988 WL 92085 (D. Minn. Feb. 22, 1988) (intentional fraudulent

11

scheme); *SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) (intentional fraud and "later efforts to avoid detection of the fraud").

In any event, documents regarding knowledge *after* the time of a purported misstatement cannot support a showing of scienter in a securities fraud case. *See Higginbotham v. Baxter Int'l. Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) ("[T]here is no 'fraud by hindsight;'" after-the-fact reports cannot be used to show knowledge at the time of purported misstatements) (citations omitted); *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *12 (N.D. Ill. Mar. 29, 2012) ("Post-class period statements by Defendants … do nothing to suggest that Defendants had contemporaneous knowledge" at the time of the alleged misstatements). Documents after September 29 are relevant only if they show Defendants' state of mind at the time of the letter.

Plaintiffs' reference to an October 2014 New York Post article—cited in their Amended Complaint and referred to by this Court for purposes of its dismissal analysis—does not support their position that post-October 14 documents bearing on Gonzalez's state of mind on September 29 in fact exist. (Am. Compl. ¶ 74, 79; Mem. Op. at 21.) Plaintiffs' allegations misconstrue both the content and the context of the director's statement. (*See* Largio Decl., Ex. B) The article does not state Gonzalez sent the September 29 letter to "calm Shire employee unrest," much less any "unrest" about the import of the Treasury Notice. It also does not attribute that post-hoc assessment of Gonzalez's mindset to the outside director as of the time of the article's publishing. Instead, the article refers back to a statement made *by the director* at the time Gonzalez's letter went out. (*Id.*) Thus, the statement does not establish that there are likely to be any relevant

12

...

documents beyond October 14. Because they have not met their burden, *see West*, 2006 WL 2349988 at *2, Plaintiffs' request for discovery after October 14, 2014 should be denied. [5]

### C. Plaintiffs' Lengthy Proposed Time Period Is Disproportionate to the Needs of This Case.

Even if the Court finds there may be some relevancy to materials outside of Defendants' proposed time period, Plaintiffs have not shown why discovery dating from February 1 to November 21, 2014 is proportional to the needs of this case. Under Rule 26(b)(1), a Court must evaluate not only whether the discovery is relevant but also whether it is "proportional to the needs of the case," including "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Southport Bank*, 2016 WL 7366885 at *2 (denying motion to compel where plaintiff did not establish relevance and "[a]ny incremental benefit [the disputed materials] would lend to this effort is outweighed by, among other things, the burden" to the producing party). Where the party seeking discovery does not establish that the timeframe of the discovery they seek is proportional to the needs of the case, discovery should be denied. *See, e.g., Ye v. Cliff Veissman, Inc.*, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016) ("Aside from this blanket assertion [of relevance], Defendants have not established that this timeframe is proportional to the needs of the case.... Because Defendants have not narrowly tailored their request to a reasonable time period and to specific content they claim is relevant to a claim or defense in this case, the Court finds that the request is overbroad.").

---

[5] To the extent the Court finds that the Shire termination agreement or related documents may be relevant, this finding would only require extending the discovery date to October 20, 2014, the date the termination was finalized. Plaintiffs have provided no viable explanation of why documents after the termination through November 21, 2014 would be relevant.

13

Here, the only claim at issue in the case relates to one alleged misstatement made in the end September 2014. Defendants have already agreed to provide documents from a reasonable time period before and after that letter. Requiring Defendants to review documents over an additional nine months will add substantial burden and expense (Largio Decl. at ¶ 6), and in the end would likely yield few if any relevant documents for production. Accordingly, because Plaintiffs' proposed time period is not proportional to the needs of this case, the Court should deny Plaintiffs' motion to compel a longer period.

## II.     Discovery from AbbVie's Directors Is Neither Relevant nor Proportional to the Needs of this Case.

Plaintiffs' request for outside directors' documents "relating to the Combination and/or the Notice" likewise seeks materials that are neither relevant nor proportional to the needs of the case. First, the actions of the board are not at issue in connection with the single claim remaining in this case. While Plaintiffs argue that the board "was ultimately responsible for the decision to enter into the Combination and to terminate the Combination" (Pls. Br. at 12), the decisions to enter into the transaction and later to terminate the agreement are not disputed. Rather, Plaintiffs' case is limited to the September 29 letter, which Plaintiffs do not allege the board had any role in preparing or approving. In fact, the article Plaintiffs pled into their amended complaint and rely on in their brief confirms that "the board did not review the Gonzalez [September 29] letter, and did not need to." (Largio Decl., Ex. B)

Plaintiffs also argue that the directors' communications may show conversations with Gonzalez demonstrating what Gonzalez knew at the time of the September 29 letter. However, to the extent such documents exist, they are already within the scope of what Defendants have agreed to produce, because Gonzalez is a custodian whose documents will be collected for production. (*See* Notis Decl. at Ex. E.) Beyond communications with Gonzalez himself, Plaintiffs have not

14

identified any reasonable likelihood that discovery into the directors' communications amongst themselves or with others outside of AbbVie would result in the identification of responsive information. Plaintiffs should not be permitted to fish for such documents, just in case. *Hadley*, 2012 WL 2866463, at *2 n.3.

Second, discovery of these communications is not proportional to the needs of this case. As Plaintiffs note, AbbVie's non-employee directors do not have AbbVie email accounts. (Pls. Br. at 12) So rather than conducting an email collection from AbbVie's own servers, discovery of the directors' communications would require numerous, separate collections from the third party email accounts belonging to the directors. For some directors, that would entail collecting and reviewing the directors' *personal* email accounts. Many AbbVie directors, however, use their *non-AbbVie business* email addresses to communicate about their director responsibilities. Discovery into these directors' emails, then, would require AbbVie to collect and review materials from a number of third party businesses' servers, including Allstate Co., Boston Consulting Group, Caterpillar Inc., Northern Trust Corp., and Yale School of Medicine. Because AbbVie does not have access to any of these outside email accounts, AbbVie would need to seek access from these entities—raising confidentiality (and possibly other) concerns from the directors' wholly separate places of business. While there may be cases where such a burdensome invasion of personal (and business) privacy is warranted, this case—focused on a single letter with which the outside directors had no apparent involvement—is not it. Thus, the collection, processing, and review of directors' communications maintained on various servers is disproportionate to the narrow needs of this case.

## Conclusion

For the foregoing reasons, Defendants request that this Court deny Plaintiffs' motion to compel.

| | |
|---|---|
| Dated: July 24, 2017 | Respectfully submitted, |
| | /s/  Devon M. Largio |
| | Robert J. Kopecky |
| | Joshua Z. Rabinovitz, P.C. |
| | Devon M. Largio |
| | KIRKLAND & ELLIS LLP |
| | 300 North LaSalle |
| | Chicago, IL 60654 |
| | 312-862-2000 |
| | Robert.Kopecky@kirkland.com |
| | Joshua.Rabinovitz@kirkland.com |
| | Devon.Largio@kirkland.com |
| | |
| | *Counsel for Defendants* |