**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 14-cv-9465 |
| | ) | Honorable Robert M. Dow, Jr. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RICHARD GONZALEZ and ABBVIE INC., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.  INTRODUCTION ...................................................................................................... 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT .......................................... 2

    A.  The Litigation ................................................................................................ 2

    B.  Settlement Discussions ................................................................................. 4

    C.  Terms of the Proposed Settlement ................................................................ 4

III.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 5

    A.  The Proposed Settlement Enjoys a Presumption of Fairness ....................... 7

    B.  The Settlement Benefits Fall Within the Range of Possible Recovery ......... 8

    C.  The Settlement Treats All Settlement Class Members Fairly ....................... 9

    D.  The Settlement Does Not Excessively Compensate Plaintiff's Counsel ...... 10

IV.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............... 11

V.  THE COURT SHOULD APPROVE THE PROPOSED FORM, METHOD AND
    ADMINISTRATION OF CLASS NOTICE ............................................................... 12

    A.  The Form of Notice is Appropriate .............................................................. 12

    B.  The Notice Program Comports with the Federal Rules and Due Process ..... 13

    C.  Lead Counsel Selected a Highly Qualified Claims Administrator ............... 14

VI.  PROPOSED SCHEDULE OF EVENTS ................................................................... 14

VII.  CONCLUSION ....................................................................................................... 14

## TABLE AUTHORITIES

**Cases**                                                                     **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................... 7

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   710 F.3d 754 (7th Cir. 2013) .................................................................................. 7

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 11

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) .................................................................................. 6

*Beesley v. Int'l Paper Co.*,
   No. 3:06–cv–703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ................................ 10

*Boggess v. Hogan*,
   410 F. Supp. 433 (N.D. Ill. 1975) ........................................................................... 7

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
   No. 11-cv-08332-AJS (N.D. Ill. Aug. 5, 2014) ..................................................... 10

*Gautreaux v. Pierce*,
   690 F. 2d 616 (7th Cir. 1982) ................................................................................. 8

*Goldsmith v. Tech. Solutions Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................... 6, 7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................ 11

*In re Career Educ. Corp. Sec. Litig.*,
   2008 WL 8666579 (N.D. Ill. June 26, 2008) ..................................................... 7, 14

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   80 F.Supp.3d 838 (N.D. Ill. Feb. 20, 2015) .......................................................... 10

*In re Gen. Motors Corp. Engine Interchange Litig.*,
   594 F.2d 1106 (7th Cir.1979) .................................................................................. 6

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. Jan. 26, 2016) ................................................................ 6

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
   No. 09 C 7666 (N.D. Ill. Jan. 22, 2014) ................................................................. 10

*Isby v. Bayh*,
   75 F. 3d 1191 (7th Cir. 1996) .................................................................................. 5

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
   264 F.R.D. 438 (N.D. Ill. Dec. 22, 2009) ............................................................... 6

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................ 7, 13

*McCue v. MB Fin., Inc.*,
   No. 1:15-CV-00988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ........................... 7

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................. 9

*Stull v. YTB Int'l, Inc.*,
   No. 08-CV-0565, 2015 WL 13631334 (S.D. Ill. June 8, 2015) ............................... 8

*Susquehanna Corp. v. Korholz*,
   84 F.R.D. 316 (N.D. Ill. 1979) ................................................................................ 7

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
   309 F.3d 978 (7th Cir. 2002) ................................................................................. 11

*Williams v. Quinn*,
   748 F. Supp. 2d 892 (N.D. Ill. 2010) ...................................................................... 5

**Statutes**

15 U.S.C. § 78u-4(a)(7) ............................................................................................. 13

**Rules**

Fed. R. Civ. P. Rule 23 ...................................................................................... *passim*

**Other Authorities**

*Manual for Complex Litigation*, (*Fourth*) §§ 21.632, 21.633, 21.634, 40.42 (2004) ..... 6, 8, 12, 13

*Newberg on Class Actions* §§ 8.04, 11.41 (*Fourth*) (2002) ................................. 5, 6, 13

*Newberg on Class Actions* § 22:82 (*Fifth*) (2017) ....................................................... 11

iii

Lead Plaintiff Dawn Bradley ("Plaintiff"), individually and on behalf of the proposed Class, respectfully submits this memorandum of law in support of her unopposed motion, pursuant to Fed. R. Civ. P. 23, for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Notice to the Class ("Preliminary Approval Order"), submitted herewith.[1]

## I. INTRODUCTION

Plaintiff has reached an agreement with AbbVie, Inc. ("AbbVie" or the "Company"), and Richard Gonzalez (collectively, "Defendants") to settle all claims in the above-captioned action (the "Action") in return for a cash payment of $16.75 million. Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 by making misrepresentations and omitting material information in their communications to Shire plc. ("Shire") investors in AbbVie's filings with the U.S. Securities and Exchange Commission. The terms of the Settlement are contained in the Stipulation. Plaintiff seeks entry of the Preliminary Approval Order, which: grants preliminary approval of the Settlement; certifies a Class for settlement purposes, appoints the Plaintiff to serve as Class Representative, and appoints Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP to serve as Lead Counsel; approves the Parties' proposed form and method of giving Class members notice of the Action and proposed Settlement; directs that notice be given to Class members in the proposed form and manner; and sets a hearing date to consider final approval of the Settlement, entry of judgment, and Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation.

The proposed Settlement warrants the Court's preliminary approval because it represents a highly favorable result for the Class following extensive arm's-length negotiations overseen by a well-respected, nationally-recognized mediator. It also satisfies all the approval factors required

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation of Settlement dated May 31, 2019 (the "Stipulation"), submitted herewith.

by Rule 23(e) and Seventh Circuit precedent.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     The Litigation

On July 18, 2014, AbbVie announced it had entered into an agreement to acquire Shire for $54 billion in an inversion transaction (the "Combination"), by which AbbVie would become a foreign corporation to reduce its U.S. taxes.[2]  AbbVie did not disclose the substantial value of the expected tax savings.  On September 22, 2014, before the Combination was completed, the U.S. Treasury Department issued a notice (the "Treasury Notice") of changes to the tax regulations to dissuade U.S. companies from entering into inversions.[3]  On September 29, 2014 (the first day of the class period), Gonzalez issued a public letter to Shire's employees (the "Letter") stating he was "more energized than ever" and "more confident than ever" about the Combination.[4]  The market and media regarded Gonzalez's statement as a sign that the Combination was moving forward despite the changes announced in the Treasury Notice.[5]  Plaintiff alleged that the Letter was materially false and misleading, and concealed the Company's active re-consideration of the Combination after the Treasury Notice was issued.  Plaintiff alleged that by September 29, 2014, AbbVie and Gonzalez knew or recklessly ignored that the Combination would not proceed since a significant portion of the value of the Combination was tied to tax benefits that were almost certainly lost because of the Treasury Notice.  Plaintiff alleged that under these circumstances, it was at least reckless, if not outright deceit, to tell the market that Gonzalez was more energized

---

[2]     *See* Press Release available at: https://news.abbvie.com/news/recommended-combination-shire-plc-and-abbvie-inc.htm

[3]     U.S. Treasury Notice 2014-52 available at: https://www.irs.gov/pub/irs-drop/N-14-52.pdf

[4]     Letter available at: https://www.sec.gov/Archives/edgar/data/936402/000110465914068977/a14-18836_13425.htm

[5]     See e.g., *The Wall Street Journal*, "AbbVie Tell Shire Employees: The Merger Will Go On" Sept. 29, 2014, available at: https://blogs.wsj.com/moneybeat/2014/09/29/abbvie-tell-shire-employees-the-merger-will-go-on/

than ever about a Combination that was unlikely to be consummated.

On October 14, 2014 (the last day of the class period), AbbVie announced as a result of the Treasury Notice, its Board was reconsidering its recommendation to shareholders to approve the Combination.[6] As a result, Shire securities fell. On October 20, 2014, AbbVie announced it reached an agreement to end the Combination and pay Shire a $1.64 billion termination fee.[7]

This Action was commenced on November 25, 2014. ECF No. 1. On February 4, 2015, the Court appointed lead plaintiffs and approved their selection of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel. ECF No. 12.

On March 29, 2016, the Court dismissed the original complaint upon Defendants' motion, with leave to Amend. ECF No. 37. On May 2, 2016, plaintiffs filed an Amended Complaint. ECF No. 38. On June 16, 2016, Defendants filed a Motion to Dismiss the Amended Complaint. ECF No. 43. In a Memorandum Opinion and Order entered on March 10, 2017, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 53. The Court denied the motion as to Gonzalez's September 29, 2014 statements in the Letter. *Id.* The Court's Order narrowed the class period to September 29, 2014 through October 14, 2014. *Id.*

Discovery began following a pretrial status hearing on March 29, 2017, at which the Court adopted the parties' proposed discovery plan. ECF No. 61. The parties engaged in several discovery motions and conferences throughout 2017 and 2018, including four motions to compel and two motions for protective order. Declaration of Jennifer Sarnelli ("Sarnelli Dec.") at ¶3. Defendants eventually produced approximately 50,000 pages of documents. *Id.* Plaintiff deposed ten fact witnesses and Defendants deposed the Plaintiff and her husband. *Id.* at ¶¶4-5. Defendants

---

[6]    Press Release available at: https://www.prnewswire.com/news-releases/announcement-of-notice-to-shire-of-abbvie-board-intention-to-reconsider-recommendation-279213722.html
[7]    Press Release available at: https://news.abbvie.com/news/announcement-termination-proposed-abbvie-and-shire-transaction.htm

also deposed Plaintiff's class certification expert, Chad W. Coffman of Global Economics Group, and Plaintiff deposed Defendants' expert, Allan W. Kleidon of Cornerstone. *Id*. at ¶6.

On December 21, 2017, Plaintiff moved to certify a class of all persons who purchased or otherwise acquired ADS or purchased call options or sold put options of Shire between September 29 and October 14, 2014. ECF No. 105. Defendants raised challenges to the Plaintiff's expert but did not file a *Daubert* motion. After the motion was fully briefed, the Court on September 25, 2018, issued an order directing Defendants to file a formal *Daubert* motion. ECF No. 253. The *Daubert* motion was fully briefed as of November 9, 2018. On April 10, 2019, the Parties jointly informed the Court that a settlement-in-principle had been reached. ECF No. 263.

## B.      Settlement Discussions

Lead Counsel and Defendants' counsel engaged in extensive arms-length negotiations to settle the claims in this Action. The Parties agreed to a formal mediation process overseen by David Murphy, an experienced mediator with Phillips ADR, which included a full-day mediation session on March 14, 2019 and near-daily telephonic negotiations through Mr. Murphy through April 5, 2019 when a resolution was achieved. Sarnelli Dec. at ¶¶ 22-26. Before the in-person mediation session, the Parties exchanged detailed mediation statements and, during the session, thoroughly discussed liability and damages issues. *Id*. at ¶25. As a result of the negotiations with Mr. Murphy, the Parties agreed to settle the Action for $16.75 million. *Id*. at ¶26.

## C.      Terms of the Proposed Settlement

On June 18, 2019, the Parties signed the Stipulation, setting forth the full terms of the Settlement. The Settlement provides that AbbVie (and/or its insurers) will pay the proposed Class $16.75 million in cash (the "Settlement Amount"). Stipulation at ¶1.24. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and expenses awarded by the Court, taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the

"Net Settlement Fund"), will be distributed to eligible Class members who submit valid Claim

Forms ("Authorized Claimants") in accordance with a plan of allocation described in the Notice.

> The Parties agreed to certification of the following Class for settlement purposes only:

> all Persons who purchased or otherwise acquired comprised of all persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options of Shire between September 29 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Class member that validly and timely requests exclusion in accordance with the requirements set by the Court.

The proposed Class easily satisfies the requirements of Rules 23(a) and 23(b)(3). If the Settlement

receives the Court's final approval, Class members will release certain claims. *See* Stipulation at

¶1.20. The release's scope is reasonable as it is limited to claims related to the purchase, holding

or sale of publicly-traded Shire securities and to the Complaint's factual allegations. *Id*.

This is an excellent result for the Class, particularly given the stage of the litigation, the

total estimated recoverable damages, and the risks, delay and expense of continued litigation.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The law favors settlement, particularly in class actions where substantial resources can be

conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh*, 75 F.

3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action

litigation."); *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (same); *see also*

*Newberg on Class Actions* § 11.41 (*Fourth*) (2002) ("*Newberg*") ("The compromise of complex

litigation is encouraged by the courts and favored by public policy."). "[T]he federal courts look

with great favor upon the voluntary resolution of litigation through settlement." *Goldsmith v.*

*Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *6 (N.D. Ill. Oct. 10, 1995).

The Court's review of a proposed class action settlement is a two-step process. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). *First*, the district court issues a "preliminary approval" order to determine whether the proposed settlement is "within the range of possible approval." *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir.1979). *Second*, the Court issues a "final approval" order after notifying the class of the settlement and holding a hearing to consider the fairness of settlement. *Manual for Complex Litigation*, Fourth, ("*Manual*") § 21.634 (2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the Court to fulfill its oversight role on behalf of the class members' interests. *See Newberg*, § 11.25.

Effective December 1, 2018, Congress amended Rule 23(e) to, among other things, specify that a court's preliminary approval analysis should be based on whether notice should be provided to the class given the likelihood that the Court will be able to finally approve the settlement and certify the class. *See* Fed. R. Civ. P. 23(e)(1)(B). The Court should grant preliminary approval where, as here, "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *Newberg*, §13:12; *see also Armstrong*, 616 F.2d at 314 (the question at the preliminary approval stage is "whether the proposed settlement is within range of possible approval"); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. Jan. 26, 2016) ("the district court must determine whether the proposed settlement is 'within the range of possible approval'") (internal quotations omitted); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.* 264 F.R.D. 438, 447 (N.D. Ill. Dec. 22, 2009) (a relevant consideration is "whether [the settlement] has no obvious deficiencies and does not

improperly grant preferential treatment to class representatives or segments of the class").

**A.    The Proposed Settlement Enjoys a Presumption of Fairness**

A proposed settlement enjoys a presumption of fairness if the Court finds that the settlement has been arrived at after arm's-length negotiations between counsel experienced in similar litigation. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate) (*citing Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979)); *see also Boggess v. Hogan,* 410 F. Supp. 433, 438 (N.D. Ill. 1975); *Goldsmith*, 1995 WL 17009594, at *3; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012), *appeal dismissed*, 710 F.3d 754 (7th Cir. 2013).

The Settlement falls well within the range of possible approval and should be presumed fair.  The Settlement was reached following extensive arm's-length negotiations with the assistance of a highly experienced mediator.  Sarnelli Dec. at ¶¶18, 22-26.  The arm's-length nature of the settlement negotiations, and the involvement of an experienced mediator, like Mr. Murphy, supports the conclusion that the Settlement is fair and was achieved free of collusion.  *See In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (settlement "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

The presumption of fairness is further bolstered by the extensive discovery obtained by Lead Counsel.  At the time the Parties agreed to the Settlement, they had already completed all fact discovery and depositions of expert witnesses on class certification issues.  Sarnelli Dec. at ¶19.  Accordingly, when Plaintiff agreed to the terms of the Settlement, she was well-informed of the strengths and weaknesses of her case, and the inherent risks of continued litigation.  *McCue v. MB Fin., Inc.*, No. 1:15-CV-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) ("A

'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'").

### B. The Settlement Benefits Fall Within the Range of Possible Recovery

At this stage, "the Court need only determine whether the settlement is 'within the range of possible approval.'" *Stull v. YTB Int'l, Inc.*, No. 08-CV-0565, 2015 WL 13631334, at *5 (S.D. Ill. June 8, 2015). Preliminary approval is not a final decision, rather, the court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce,* 690 F. 2d 616, 621 n.3 (7th Cir. 1982). If the Court finds the settlement "within the range of possible approval," then it should order that the class be notified of the settlement and of a hearing to consider final settlement approval. *See Manual*, at § 40.42 (model order). The proposed $16.75 million Settlement is a substantial recovery for the Class and falls well within the range of what is fair, reasonable, and adequate.

Plaintiff acknowledges there were substantial risks in further prosecution of this Action. While she believes she would have prevailed, such an outcome is far from certain. It is possible the case could have been lost at trial, resulted in liability but no damages, or lost on appeal.

Plaintiff alleged that after the Treasury Notice was issued the Combination was no longer financially beneficial to AbbVie and its shareholders and Defendants knew they would need to terminate the Combination in light of the tax law change. Following the Treasury Notice, Gonzalez issued the Letter claiming to be "more energized" and "more confident" "then ever" about the Combination, but omitted the Company was reconsidering the Combination in light of the tax law change.[8] Defendants may argue that they had no duty to inform the market that they were evaluating whether to continue with the Combination until the Company made a final

---

[8]    Letter available at: https://www.sec.gov/Archives/edgar/data/936402/000110465914068977/a14-18836_13425.htm

decision. Plaintiff will counter that Gonzalez should have recognized that telling the market that he was more energized than ever would be misleading in light of the Treasury Notice. Plaintiff would also argue that Gonzalez's decision not to correct the market's perception of the Letter was evidence of his intent to deceive the market.

With conflicting arguments and evidence, there is no certainty that Plaintiff would prevail at trial. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."). In light of these risks, the Court should conclude at the final hearing that the proposed Settlement is a fair, reasonable, and adequate compromise of the action and provides meaningful relief to the Class. For present purposes, it certainly falls within the range of likely approval.

### C. The Settlement Treats All Settlement Class Members Fairly

All Class members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation (the "Plan," set forth in the Notice) to be approved by the Court at the final approval hearing. Plaintiff's damages expert, in consultation with Lead Counsel, developed the Plan, which is comparable to plans of allocation that courts have approved in numerous other securities class actions. The Plan calculates a "Recognized Loss Amount" of $50.69 for each purchase or acquisition of Shire ADS and option during the Class Period. This Recognized Loss Amount accounts for the 90-day look-back period, *see* 15 U.S.C. § 78u-4(e). The Net Settlement Fund will be allocated to Class members who submit valid claims on a *pro rata* basis based on the relative size of their claims and subject to the weighting analysis of ADS as opposed to options.

The Claims Administrator will process all submitted Claim Forms and notify Class members of deficiencies or ineligibility. It will then process responses and make distributions to

eligible Class members in the form of checks and wire transfers.[9]

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Class members and merits approval at the Settlement Hearing.

### D. The Settlement Does Not Excessively Compensate Plaintiff's Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel. Lead Counsel will be compensated out of the Settlement Fund pursuant to the approval of the Court. Lead Counsel will seek no more than 30% of the Settlement Fund, an amount that is well within the percentages that courts in the Seventh Circuit approve in securities class actions with comparable recoveries. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding 33 1/3% of $64 million settlement fund); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F.Supp.3d 838, *16 (N.D. Ill. Feb. 20, 2015) (awarding one-third of $46 million common fund); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, No. 11-cv-08332-AJS, slip op. at 1 (N.D. Ill. Aug. 5, 2014), ECF No. 207 (awarding 30% of $60 million settlement fund); *Beesley v. Int'l Paper Co.*, No. 3:06–cv–703, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery). Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $750,000. In addition, Plaintiff will seek reimbursement of her time, costs and expenses not to exceed $10,000. Lead Counsel's fee and expense application will be supported by the filing of a formal motion pursuant to the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of any

---

[9] If any monies remain in the Net Settlement Fund, additional re-distributions will be made until it is no longer cost effective. At such time, any remaining balance will be contributed to Public Justice, a nonprofit legal advocacy organization, subject to approval by the Court.

subsequent fee or expense application, which will be decided at or after the Settlement Hearing.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before granting preliminary approval, the Court should determine whether the proposed class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor* 521 U.S. 591, 620 (1997); *Manual*, § 21.632. Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *Id.* Indeed, "actions under the federal securities laws are particularly well suited for representative litigation under Rule 23." *Newberg* § 22:82 (5th ed. 2017). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem*, 521 U.S. at 593. "The [very] fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340 (N.D. Ill. 2010). The proposed Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3):

**Numerosity.** There were over 40 million ADSs freely tradable during the Class Period.

**Commonality.** This action arises out of a common course of conduct, namely the misrepresentations and omissions made to all investors in Defendants' public statements during the Class Period. All claims center around common questions of law and fact focused on Defendants' wrongdoing and the harm it caused to public investors.

**Typicality.** The proposed Class Representative and all other members of the Class suffered the same injuries, stemming from the same events, practices, and unlawful conduct by Defendants.

**Adequacy.** Plaintiff has actively monitored and supervised the litigation, participated in discovery, and oversaw and approved the Settlement process. The proposed Class Representative has no conflict or antagonism with the other Class members.

**Predominance.** The common issues identified above predominate over individual issues, and a trial would not be sidetracked by adjudicating each Class member's reliance.

**Superiority.** Class adjudication is superior to a multitude of repetitive individual suits. A single adjudication for the class maximizes judicial efficiency, allows all the claims to be heard in one court, and given the prohibitive costs of litigation, is the only practical opportunity to adjudicate. There will be no difficulty in maintaining this securities litigation as a class action.[10]

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM, METHOD AND ADMINISTRATION OF CLASS NOTICE

The Court should approve the form and content of the proposed Notice. "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual* at §§ 21.632, 21.633.

### A. The Form of Notice is Appropriate

The Notice is written in plain language and provides the relevant information and answers to most questions that Class members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Class members of the nature of the Action; the definition of the Class; the claims and issues involved; that the Court will exclude from the Class any Class member who requests exclusion (and sets forth the procedures and deadlines for doing so)[11]; and the binding effect of a class judgment on Class members under

---

[10]    Plaintiff's fully briefed Class Certification Motion details the basis for Class certification. *See* Memorandum in Support of Plaintiff's Motion for Class Certification (ECF No. 105), Expert Report of Chad Coffman (ECF No. 106), Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification (ECF No. 192), Sur-Sur-Reply in Further Support of Plaintiff's Motion for Class Certification (ECF No. 240) and Supplemental Expert Report of Chad Coffman (ECF No. 244).

[11]    The Parties also executed a confidential Supplemental Agreement as noted in ¶8.3 of the Stipulation providing AbbVie the right to terminate the Settlement under certain circumstances and depending upon the damages represented by potential class members who choose to opt out of the class.

Rule 23(c)(3)(B). The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the name, address, and telephone number of Lead Counsel, who will be available to answer questions from Class members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id.*

**B.      The Notice Program Comports with the Federal Rules and Due Process**

Rule 23(c)(2)(B) requires the court to direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1). Neither Rule 23 nor due process require receipt of actual notice by all class members; rather, notice should be mailed to those who can be identified and publication used to notify others. *Newberg*, § 8.04; *see also Mangone*, 206 F.R.D. at 231-232.

The parties propose notice to be mailed to all known Class members within 35 days of the Court's entry of the Preliminary Approval Order.[12] A proposed Mailed Notice and Claim Form should be approved by the Court.[13] A Summary Notice to be published over *PR Newswire*, should also be approved.[14] Courts routinely find that comparable notice programs, combining individual notice by first class mail to all class members who can reasonably be identified, supplemented

---

[12] Plaintiff subpoenaed Shire's ADS and option older lists from the Depository Trust & Clearing Corporation (DTC) and the Claims Administrator maintains a proprietary list of about 1,350 brokers and nominees, all of whom will obtain mailed notice (without duplication).

[13] Stipulation at C-1 and C-2.

[14] *Id.* at C-3.

with publication notice, meet all the requirements of Rule 23 and due process. *See, e.g., Career Educ.*, 2008 WL 8666579, at *5 (authorizing notice by first-class mail and publication in *Investors' Business Daily* and over *PR Newswire*); *see also* Declaration of Jordan Broker of Epiq Class Action & Claims Solutions, Inc. ("Epiq") submitted herewith.

### C. Lead Counsel Selected a Highly Qualified Claims Administrator

Lead Counsel has retained Epiq as the Claims Administrator to administer the claims process and distribution of benefits pursuant to the Settlement. Sarnelli Dec. ¶¶30-33 (detailing process for selection and qualifications). Within thirty (30) calendar days after the Court enters the Preliminary Approval Order Defendants shall cause the Settlement Amount to be paid to an interest-bearing escrow account (the "Escrow Account"). Upon deposit in the Escrow Account of the Settlement Amount, Lead Counsel is authorized to pay reasonable and necessary Notice and Administration Expenses without further approval of the Court.[15]

## VI. PROPOSED SCHEDULE OF EVENTS

The Preliminary Approval Order sets forth a proposed schedule. If the Court agrees with the proposed schedule, Plaintiff requests that the Court schedule the final approval hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed Settlement, provisionally certify the proposed Settlement Class, and enter the accompanying Preliminary Approval Order submitted herewith.

---

[15] No other disbursements from the Escrow Account will occur without the Court's prior approval.

Dated: June 19, 2018

**GARDY & NOTIS, LLP**

_s/ Jennifer Sarnelli_
James S. Notis
Jennifer Sarnelli
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600

Carl Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLC**
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 312-214-3110

_Counsel for Plaintiff and the Class_