UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 14-cv-9465 |
| | ) | |
| Plaintiffs, | ) ) | Honorable Robert M. Dow, Jr. Honorable Maria Valdez |
| v. | ) ) | |
| RICHARD GONZALEZ and ABBVIE INC., | ) ) | |
| Defendants. | ) ) | |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated May 31, 2019 (the "Stipulation"), is made and entered

into by and among: (i) Lead Plaintiff Dawn Bradley ("Plaintiff") (on behalf of herself and each of

the Class Members), by and through her counsel of record in the Litigation; and (ii) AbbVie, Inc.

("AbbVie" or the "Company") and Richard Gonzalez (together, "Defendants"). Plaintiff and the

Class (to be certified for settlement purposes) and Defendants are referred to herein as the "Settling

Parties." The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the

Released Claims, subject to the approval of the Court and the terms and conditions set forth in this

Stipulation.

## I.      THE LITIGATION

The Litigation is pending in the United States District Court for the Northern District of

Illinois (the "Court"). The initial complaint in this action was filed on November 25, 2014. Dkt.

No. 1. On February 4, 2015, the Court appointed Lead Plaintiff and Lead Counsel. Dkt. No. 12.

Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by falsely reassuring the market that AbbVie intended to proceed with a proposed transaction to acquire Shire plc through an inversion transaction (the "Combination") after the U.S. Treasury Department had issued a notice on September 22, 2014 of changes to the tax regulations to dissuade U.S. companies from entering into inversions, when in fact it was reconsidering the proposed transaction and ultimately withdrew from the Combination. Defendants deny Plaintiff's allegations.

On March 29, 2016, the Court dismissed the original complaint upon Defendants' motion, with leave to amend. Dkt. No. 37. On May 2, 2016, Plaintiff filed an Amended Complaint. Dkt. No. 38. In a Memorandum Opinion and Order entered on March 10, 2017, the Court granted in part and denied in part Defendants' motion to dismiss. Dkt. No. 53. The Court denied the motion as to a September 29, 2014 communication to Shire employees and dismissed claims based on earlier statements issued prior to the US Treasury's notice. The Court's Order narrowed the class period to September 29, 2014 through October 14, 2014.

Discovery began following a pretrial status hearing on March 29, 2017, at which the Court adopted the parties' proposed discovery plan. Dkt. No. 61. The parties engaged in several discovery motions and conferences throughout 2017 and 2018, including four motions to compel and two motions for protective orders. Defendants eventually produced approximately 50,000 pages of documents. Plaintiff deposed ten fact witnesses and Defendants deposed proposed class representative Dawn Bradley and her husband Jack Bradley. Defendants also deposed Plaintiff's class certification expert, Chad W. Coffman of Global Economics Group, and Plaintiff deposed Defendants' expert, Allan W. Kleidon of Cornerstone.

On December 21, 2017, Plaintiff moved to certify a class of all persons who purchased or otherwise acquired American Depositary Shares ("ADS") or purchased call options or sold put options of Shire between September 29 and October 14, 2014, and to have Dawn Bradley appointed as class representative. Dkt. No. 105. After the motion was fully briefed, including a sur-reply and sur-sur-reply, on September 25, 2018, the Court issued an order directing Defendants to file a *Daubert* motion to exclude portions of Plaintiff's expert testimony, noting that "[t]he back-and-forth between the parties on the opinions offered in Coffman's report and rebuttal report has the hallmarks of a *Daubert* challenge" despite the absence of a formal motion. Dkt. No. 253. The *Daubert* motion was fully briefed as of November 9, 2018.

The parties engaged the services of the David Murphy from Phillips ADR, a nationally recognized mediator. The parties engaged in an all-day, in-person mediation session with the mediator on March 14, 2019. Although the parties negotiated in good faith, no agreement was reached at the mediation. The parties continued their discussion through near-daily phone conferences with the mediator, and ultimately reached an agreement in principle to resolve the Litigation on April 5, 2019. The agreement included, among other things, the Settling Parties' agreement to settle and release all claims asserted in the Litigation in return for a cash payment of $16,750,000, for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have

denied, and continue to deny, that they have committed any act or omission giving rise to any liability under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted.

## III. PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports her claims. However, Plaintiff and her counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Plaintiff and her counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiff and her counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Plaintiff and her counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Plaintiff and the Class.

## IV. TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff (for herself and the Class Members) and Defendants, by and through their counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation and the Released Claims shall be finally and fully

compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

## 1.   Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Claims Administrator" means the firm of Epiq.

1.3    "Class" means all Persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options (collectively, "Securities") of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who satisfies the criteria for being a member of the Class, but validly and timely requests exclusion in accordance with the requirements set by the Court.

1.4    "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5    "Class Period" means the period from September 29, 2014 to October 14, 2014, inclusive.

1.6    "Defendants" means AbbVie and Richard Gonzalez.

1.7    "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred or have been waived.

1.8    "Escrow Agent" means the Claims Administrator or its agents.

1.9    "Final" means when the last of the following with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the final determination of that motion or appeal such that no further judicial review or appeal is permitted, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.10    "Immediate Family" means any spouse, parent, step-parent, grandparent, child, step-child, grandchild, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-

in-law, or sister-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.11 "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.12 "Lead Counsel" means the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP.

1.13 "Litigation" means the action captioned *Rubinstein v. Gonzalez*, No. 14-cv-9465.

1.14 "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.15 "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.16 "Plaintiff" means Dawn Bradley.

1.17 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.18 "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form

attached hereto as Exhibit C-2, that a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.19    "Related Parties" means each Defendant's respective former, present or future parent companies, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.20    "Released Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation. "Released Claims" includes "Unknown Claims" as defined in ¶1.29 hereof.

1.21    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the

8

institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

    1.22   "Released Persons" means each and all of the Defendants and their Related Parties.

    1.23   "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

    1.24   "Settlement Amount" means Sixteen Million Seven Hundred Fifty Thousand Dollars ($16,750,000.00) in cash to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.1 of this Stipulation.

    1.25   "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

    1.26   "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

    1.27   "Settling Parties" means, collectively, Defendants, Plaintiff, and the Class.

    1.28   "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

    1.29   "Unknown Claims" means (a) any and all Released Claims which Plaintiff, Lead Counsel, or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants'

Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Lead Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Lead Counsel, or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a

breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

**2.     The Settlement**

**a.     The Settlement Amount**

2.1     In full and final settlement of the claims asserted in the Litigation against Defendants and in consideration of the releases specified in ¶4 herein, AbbVie shall cause the Settlement Amount to be paid by check or wire transfer in accordance with instructions to be provided by the Escrow Agent on or before thirtieth (30) calendar day after the later of: (i) the entry of the Preliminary Approval Order, as defined in ¶3.1 herein, and (ii) the provision to Defendants of all information necessary to effectuate a transfer of funds, including, but not limited to, the bank name and ABA routing number, account name and number, and a signed W-9 reflecting the taxpayer identification number for the Settlement Fund. The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

2.2     If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel have notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel have provided such written notice.

2.3     Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶2.1 herein, Defendants shall have no obligation to make any other

payment into the Settlement Fund pursuant to this Stipulation, and shall have no responsibility, obligation, or liability with respect to the Escrow Account or the monies maintained in the Escrow Account or the administration of the Settlement, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

### b.    The Escrow Agent

2.4      The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.5      The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' counsel.

2.6      Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8     After the Court issues the Preliminary Approval Order, and notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval and/or order of the Court, reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, assisting with the submission of claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow fees and costs, if any ("Notice and Administration Expenses"). The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

c.     **Taxes**

2.9     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

        (b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the elections described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

        (c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and

Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

2.10    This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

### d.    Termination of Settlement

2.11    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.8 and 2.9 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' counsel in accordance with ¶8.6 herein.

### 3. Preliminary Approval Order and Settlement Hearing

3.1     Within ten (10) calendar days after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits C-1 and C-3 attached hereto, and certification of the Class for settlement purposes. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below.

3.2     It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 ("CAFA") as set forth in ¶3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4    Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate State official of each State in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of CAFA. Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.    Releases**

4.1    Upon the Effective Date, as defined in ¶1.7 hereof, Plaintiff shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

4.2    Any Proof of Claim and Release that is executed by a Class Member shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit C-2 attached hereto.

4.3    Upon the Effective Date, Plaintiff, all Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claims against any of the Released Persons.

4.4    Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and

17

discharged all Released Defendants' Claims against Plaintiff, each and all of the Class Members, and Lead Counsel. Claims to enforce the terms of this Stipulation are not released.

**5.      Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1      The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2      The Settlement Fund shall be applied as follows:

        (a)      to pay all Notice and Administration Expenses;

        (b)      to pay the Taxes and Tax Expenses;

        (c)      to pay attorneys' fees and expenses of Lead Counsel and reimbursement of Plaintiff's expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

        (d)      after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3      After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4      Within one hundred-twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Class Member who seeks to share in the Net Settlement Fund shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit C-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within 120 days after the mailing of the Notice, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiff, her counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the

claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who does not request to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim. In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.

5.10     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments,

which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel.

5.11    Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶5.1-5.13 hereof; and Class Members, Plaintiff, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12    No Person shall have any claim against Defendants or their Related Parties, Defendants' counsel, Plaintiff, Lead Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the

finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

**6. Class Member Exclusions and Objections**

6.1     Each Class Member shall be bound by all determinations and judgments in the Litigation, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Class, unless such Class Member seeks exclusion from the Class.

6.2     A putative Class Member wishing to exclude themselves from the Class shall mail the request to the Claims Administrator by First Class Mail postmarked no later than twenty-one (21) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), to the address designated in the Notice.

6.3     Such request for exclusion shall clearly indicate the name, address, and telephone number of the Person seeking exclusion, that the sender requests to be excluded from the Class and must be signed by such person. All persons requesting exclusion also shall be requested to state: the date(s), price(s), number(s), and type of publicly traded security (ADS or put or call option), and for options the specific option series (by name, type ("put" or "call"), strike price, and expiration date), they purchased, acquired, and sold during the Class Period.

6.4     Putative Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund as described in the Stipulation and Notice. The Claims Administrator is authorized to request from any Person requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions and/or sales of Shire publicly traded ADS or put or call options during the Class Period.

6.5     Copies of all requests for exclusion shall be provided to counsel for Plaintiff and Defendants, as expeditiously as possible, but in no event later than ten (10) business days after receipt by the Claims Administrator.

6.6     Any Class Member that does not request exclusion from the Class may file objections to the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, including Plaintiff's expenses.  Any such objections and any supporting papers shall be filed with the Court at least twenty-one (21) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), and also delivered by hand or First-Class Mail to Jennifer Sarnelli, Gardy & Notis, LLP, Tower 56, 126 East 56th Street, 8th Floor, New York, NY 10024 and Joshua Z. Rabinovitz, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, by that same date.

6.7     Any such objection must: (a) clearly indicate the objector's name, mailing address, daytime telephone number and e-mail address; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, and/or fee and expense application in *Rubinstein v. Gonzalez*, No. 14-cv-9465; (c) specify the reason(s), if any, for the objection, including any legal support for such objection; (d) state the number of shares of Shire publicly traded ADS or put or call options owned during the Class Period; (e) list the date(s), price(s), and list the date(s), price(s), and type of publicly traded security (ADS or option), and for options, identify each Series, by name, type ("put" or "call"), strike price, and expiration date, acquired and sold during the Class Period; and (f) provide written documentation (whether from the objector's bank, broker or otherwise) of such trading.  In order to be considered, an objection also must be signed by the Class Member making the objection.

6.8     Attendance at the Settlement Hearing is not necessary.  However, any persons wishing to be heard orally, either individually or through counsel of his, her, or its own choice, in opposition to the approval of the Settlement, the Plan of Allocation, and/or the request by Lead Counsel for attorneys' fees and expenses, are required to indicate in their written objection their intention to appear at the Settlement Hearing and to include in their written objection the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing.

6.9     Class Members do not need to appear at the hearing or take any other action to indicate their approval.  Lead Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

6.10    Any Class Member who does not object to the Settlement, Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses in the manner prescribed herein and in the Notice, shall be deemed to have waived such objection and his, her, or its right to object to the Settlement, the Judgment, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, shall be deemed a Class Member and shall forever be barred and foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, this Order, the Final Judgment, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, and from otherwise being heard concerning the Settlement, this Order, the Judgment, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses in this or any other proceeding.

7.      **Lead Counsel's Attorneys' Fees and Expenses**

7.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) reimbursement for Plaintiff's time and expenses in connection with her work on behalf of the class; plus (d) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. An application for fees and expenses may include a request for reimbursement of Plaintiff's verifiable reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995. Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

7.2     Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court enters an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among Lead Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel who have received any portion of the Fee and Expense Award shall, within five (5) business days from receiving notice from Defendants' counsel or from

25

a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination.

7.4    The procedure for and the allowance or disallowance by the Court of any applications by any Lead Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

7.5    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of AbbVie's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.1, Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

## 8.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

8.1    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account;

26

(c)     the time for AbbVie to exercise its option to terminate the Stipulation pursuant to ¶8.3 hereof has passed without any such termination;

(d)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto, following notice to the Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(e)     the Judgment has become Final, as defined in ¶1.9 hereof.

8.2     Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If the conditions specified in ¶8.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶8.5, 8.6 and 8.7 hereof unless Plaintiff and Defendants mutually agree in writing to proceed with the Settlement.

8.3     AbbVie shall have the right to terminate the Settlement and render it null and void in the event that Class Members who purchased or otherwise acquired more than a certain percentage of Shire Securities subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiff and AbbVie. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

8.4     Plaintiff or AbbVie shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect by the Court, the U.S. Court of Appeals for the Seventh Circuit, or the Supreme Court of the United States.

8.5     If, before the Settlement becomes Final, AbbVie files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by AbbVie to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned to AbbVie out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the Judgment, including the releases pursuant thereto, and the Settlement and this Stipulation shall terminate.

8.6     Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant

to ¶¶2.8 and/or 2.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.8 and/or 2.9 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution. Such refunds shall be pursuant to written instructions from Defendants' counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same manner as the Settlement Fund described in this ¶8.6. Such payments shall be pursuant to written instructions from Defendants' counsel.

8.7     In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of April 5, 2019. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.29, 2.3-2.11, 7.3-7.4, 8.4-8.7, and 10.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

8.8     If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Plaintiff nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.8 or 2.9 hereof. In addition, any amounts already incurred pursuant to ¶¶2.8 or 2.9 hereof at the time of such termination or cancellation but which have not been paid,

29

shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.11 and 8.6 hereof.

### 9. No Admission of Wrongdoing

9.1     Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiff or any Class Member or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Defendant, or against Plaintiff or any Class Member as evidence of any infirmity in the claims of Plaintiff and the Class;

(c)     shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any

way referred to for any other reason as against any of the Settling Parties in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)　　shall be construed against Defendants, Plaintiff, or the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

**10.　Miscellaneous Provisions**

10.1　The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

10.2　No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in- interest.

10.3　The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines

to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.4    Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, except as to the State Court Actions.

10.5    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.6    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

10.7    This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

10.8    Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

10.9    Lead Counsel, on behalf of the Class, are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which they deem appropriate.

10.10   Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.11   This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or pdf via e-mail shall be deemed originals.

10.12   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given when delivered by electronic mail addressed to the intended recipient as set forth below:

**If to Plaintiffs or to Lead Counsel:**

James Notis – jnotis@gardylaw.com
Jennifer Sarnelli – jsarnelli@gardylaw.com
Mark Rifkin – rifkin@whafh.com

**If to Defendants or to Defendants' counsel:**

Joshua Z. Rabinovitz – jrabinovitz@kirkland.com

10.13   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.14   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

10.15   Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

10.16  This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Illinois without giving effect to its choice-of-law principles.

10.17  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.18  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

10.19  The Parties agree that neither side will make or cause to be made any public statements regarding the settlement, other than the public notices described in this Agreement, and notification of the Settlement on counsel's websites or any statements in court regarding the Settlement.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated May 31, 2019.

GARDY & NOTIS, LLP

James S. Notis
Jennifer Sarnelli
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509

**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**

Mark C. Rifkin
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600

**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604

*Counsel for Plaintiff and the Class*

35

Robert J. Kopecky
Joshua Z. Rabinovitz
Devon M. Largio
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000

*Counsel for Defendants*

Robert A. Michael
Senior Vice President, Chief Financial Officer
AbbVie Inc.
1 North Waukegan Road
North Chicago, IL 60064

EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, ) ) ) | No. 14-cv-9465 |
| ) | |
| Plaintiffs, ) | Honorable Robert M. Dow, Jr. |
| ) | |
| v. ) | |
| ) | |
| RICHARD GONZALEZ and ABBVIE INC., ) | |
| ) | |
| Defendants. ) | |

## [PROPOSED] ORDER PRELIMINARLY APPROVING SETTLEMENT

WHEREAS, a securities class action is pending in this Court entitled *Rubinstein v. Gonzalez*, No. 14-cv-9465 (the "Litigation");

WHEREAS, on May __, 2019, the parties to the Litigation, Plaintiff Dawn Bradley on behalf of herself and the other Members of the Class, and defendants AbbVie, Inc. ("AbbVie"), and Richard Gonzalez (together, "Defendants," and, collectively with Plaintiff, the "Settling Parties") entered into the Stipulation of Settlement (the "Stipulation"), which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the Exhibits thereto, sets forth the terms and conditions for the proposed settlement of the claims alleged in any of the complaints filed in this Litigation on the merits and with prejudice;

WHEREAS, Plaintiff has made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation and allowing notice to Members of the Class as more fully described herein;

WHEREAS, the parties to the Stipulation having consented to the entry of this Order;

WHEREAS, the Court having read and considered: (a) Plaintiff's unopposed motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the accompanying Exhibits attached thereto;

WHEREAS, unless otherwise specified all capitalized terms used, but not otherwise defined, herein have the same meanings as set forth in the Stipulation;

**NOW THEREFORE, IT IS HEREBY ORDERED**, this ___ day of_____, 2019 that:

1.      The Court hereby preliminarily approves the Stipulation[1] and the Settlement set forth therein as being fair, reasonable and adequate to Class Members (defined in ¶1.4 of the Stipulation), subject to further consideration at the Settlement Hearing described in ¶2 below.

2.      A hearing (the "Settlement Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Court on _____, 2019 at _____ ___.m. [a date that is approximately 110 calendar days from the date of entry of this Order], for the following purposes:

(a)      to determine whether the proposed Settlement is fair, reasonable and adequate to Class Members, and should be approved by the Court;

(b)      to determine whether the Judgment as provided under the Stipulation should be entered, dismissing the Litigation on the merits and with prejudice, and to determine whether the release by the Class of the Released Claims, as set forth in the Stipulation, should be provided to the Released Persons;

---

[1]      The Exhibits attached to the Stipulation filed with the Court are incorporated herein as though set forth in this Order.

(c)     to determine whether the release by the Released Persons of the Released Defendants' Claims, as set forth in the Stipulation, should be provided;

(d)     to determine whether the proposed Plan of Allocation of the proceeds of the Settlement is fair and reasonable and should be approved by the Court;

(e)     to consider Lead Counsel's application for an award of attorneys' fees and expenses, including Plaintiff's expenses; and

(f)     to rule upon such other matters as the Court may deem appropriate.

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby certifies a Class, for settlement purposes only, defined as: All Persons who purchased or otherwise acquired American Depositary Shares or purchased call options or sold put options of Shire plc between September 29, 2014 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with this Order.

4.     Notice of the Settlement and the Settlement Hearing shall be given to the Members of the Class as set forth in ¶¶8, 11-12 of this Order.

5.     The Court may adjourn the Settlement Hearing without further notice to the Class and reserves the right to approve the Settlement, including, if appropriate, with any such modifications as may be agreed to by the parties without further notice to the Class. The Court further reserves the right to enter its Judgment approving the Settlement and dismissing the

Litigation on the merits and with prejudice regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and expenses.

6.     The Court approves the form, substance and requirements of: the Notice of Proposed Settlement of Class Action (the "Notice"); the Proof of Claim and Release form (the "Claim Form"); and Summary Notice, annexed to the Stipulation as Exhibits C-1, C-2 and C-3, respectively, and finds that the form, content, and mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶8, 11-12 of this Order, (i) meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq.*, as amended, and all other applicable laws and rules; (ii) is the best notice practicable under the circumstances; (iii) constitutes due and sufficient notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Litigation, of the effect of the proposed Settlement (including the releases to be provided thereunder), of Lead Counsel's application for an award of attorneys' fees and expenses, including Plaintiff's expenses, of their right to exclude themselves from the Class, and of their right to appear at the Settlement Hearing; and (iv) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement.  The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

7.     The Court approves the appointment of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claim Forms as more fully set forth below.

8.      Within thirty-five (35) calendar days of the entry of this Order (the "Notice Date"), the Claims Administrator shall cause the Notice and the Claim Form, substantially in the forms annexed to the Stipulation as Exhibits C-1 and C-2, to be mailed by First-Class Mail, postage prepaid, to all potential Class Members who can be identified with reasonable effort.  The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons or entities who purchased or otherwise acquired Shire publicly traded American Depository Shares during the Class Period as record owners but not as beneficial owners.  Such nominee purchasers are directed, within seven (7) business days of their receipt of the Notice, to either forward copies of the Notice and Claim Form to their beneficial owners or to provide the Claims Administrator with lists of the names and addresses of the beneficial owners, and the Claims Administrator is ordered to send the Notice and Claim Form promptly to such identified beneficial owners.  Nominee purchasers who elect to send the Notice and Claim Form to their beneficial owners shall send a statement to the Claims Administrator confirming that the mailing was made as directed.  Additional copies of the Notice shall be made available to any record holder requesting such for the purpose of distribution to beneficial owners, and such record holders shall be reimbursed from the Settlement Fund, upon receipt by the Claims Administrator of proper documentation, for the reasonable expense of sending the Notice and Claim Form to beneficial owners.  Lead Counsel shall, at least fifteen (15) calendar days prior to the Settlement Hearing, file with the Court proof, by affidavit or declaration, of mailing of the Notice and Claim Form.

9.      The Escrow Agent or its agents are authorized and directed to prepare any tax returns and any other tax reporting form required to be filed on behalf of or in respect of the Settlement Fund, to cause any Taxes due and owing to be paid from the Settlement Fund, and to

otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation without further order of the Court.

10.     Lead Counsel shall submit their papers in support of final approval of the Settlement, the Plan of Allocation, and application for attorneys' fees and expenses, including Plaintiffs' expenses, by no later than thirty-five (35) calendar days prior to the Settlement Hearing. All reply papers in support of such motions shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

11.     The Claims Administrator shall cause the Summary Notice to be published once over the *Business Wire* within ten (10) business days of the Notice Date. Lead Counsel shall, at least fifteen (15) calendar days prior to the Settlement Hearing, file with the Court proof, by affidavit or declaration, of the publication of the Summary Notice.

12.     In order to be entitled to participate in the Net Settlement Fund, in the event the Settlement is approved in accordance with the terms and conditions set forth in the Stipulation, each Class Member shall take the following actions and be subject to the following conditions:

(a)     A properly executed Claim Form, substantially in the form attached to the Stipulation as Exhibit C-2, must be submitted to the Claims Administrator, online at www.AbbVieSettlement.com or emailed to info@AbbVieSettlement.com or mailed to the Post Office Box indicated in the Notice, postmarked or submitted electronically no later than one hundred- twenty (120) calendar days from the Notice Date. Such deadline may be further extended by Court order. Any Claim Form submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Notice. Lead Counsel may, at their discretion, direct the Claims Administrator to accept late submitted claims if they will

not materially delay distribution of the Net Settlement Fund, but will not incur any liability for declining to do so.

(b)     The Claim Form submitted by each Class Member must satisfy the following conditions:  (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip or such other documentation as is deemed adequate by the Claims Administrator; (iii) if the person executing the Claim Form is acting in a representative capacity, a certification of his current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of the Claims Administrator; and (iv) it must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

(c)     By submitting a Claim Form, a Person shall be deemed to have submitted to the jurisdiction of this Court solely with respect to the claim submitted and the subject matter of the Settlement and shall (subject to effectuation of the Settlement) release all Released Claims as against the Released Persons provided in the Stipulation.

13.     Any Member of the Class who does not submit a Claim Form in the manner stated in this Order or whose Claim Form is not otherwise approved by the Court shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund and shall forever be barred from sharing in the Net Settlement Fund.  In all other respects, however, any such Member of the Class shall be subject to and bound by all of the terms of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Litigation, including, without limitation,

the Judgment and the releases provided for therein, whether favorable or unfavorable to the Class and will be barred from commencing, maintaining, or prosecuting any of the Released Claims against the Released Persons unless such Member of the Class has submitted a request to be excluded from the Class in the manner required by this Order. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in ¶12 above.

14. Class Members shall be bound by all determinations and judgments in the Litigation, whether favorable or unfavorable, unless such persons request exclusion from the Class in a timely and proper manner, as hereinafter provided. A putative Class Member wishing to make such request shall mail the request to the Claims Administrator by First-Class Mail postmarked no later than twenty-one (21) calendar days prior to the Settlement Hearing, to the address designated in the Notice. Such request for exclusion shall include the name, address, and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Class and must be signed by such person. Such persons requesting exclusion shall also provide: the date(s), price(s), number(s), and type of publicly traded security (ADS or put or call option), and for options the specific option series (by name, type ("put" or "call"), strike price, and expiration date), they purchased, acquired, and sold during the Class Period. Putative Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund. The Claims Administrator is authorized to request from any Person requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions and/or sales of Shire publicly traded ADS or put or call options during the Class Period. Copies of all requests for exclusion shall be provided to Plaintiff's and Defendants' counsel, as expeditiously as possible, but in no event later than ten (10) business days after receipt by the Claims Administrator.

16.     Any Class Member that does not request exclusion from the Class may file objections to the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, including Plaintiff's expenses.  Any such objections and any supporting papers shall be filed with the Court on or before twenty-one (21) calendar days prior to the Settlement Hearing, and also delivered by hand or First-Class Mail to Jennifer Sarnelli, Gardy & Notis, LLP, Tower 56, 126 East 56th Street, 8th Floor, New York, NY 10024 and Joshua Z. Rabinovitz, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, by that same date. Any such objection must: (a) clearly indicate the objector's name, mailing address, daytime telephone number and e-mail address; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, and/or fee and expense application in *Rubenstein v. Gonzalez*, No. 14-cv-9465; (c) specify the reason(s), if any, for the objection, including any legal support for such objection; (d) state the number of shares of Shire publicly traded ADS or put or call options owned during the Class Period; (e) list the date(s), price(s) and number(s) of shares of Shire publicly traded ADS or put or call options purchased, acquired and sold during the Class Period; and (f) provide written documentation (whether from the objector's bank, broker or otherwise) of such trading.  In order to be considered, an objection also must be signed by the Class Member making the objection.  Attendance at the Settlement Hearing is not necessary.  However, any persons wishing to be heard orally, either individually or through counsel of his, her, or its own choice, in opposition to the approval of the Settlement, the Plan of Allocation, and/or the request by Lead Counsel for attorneys' fees and expenses, are required to indicate in their written objection their intention to appear at the Settlement Hearing and to include in their written objection the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing.  Class Members do not need to appear at the hearing or take

any other action to indicate their approval. Lead Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

17. Any Class Member who does not object to the Settlement and/or the Plan of Allocation, and any Class Member who does not object to Lead Counsel's application for an award of attorneys' fees and expenses in the manner prescribed herein and in the Notice, shall be deemed to have waived such objection and his, her, or its right to object to the Settlement, this Order, the Judgment, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, shall be deemed a Class Member and shall forever be barred and foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, this Order, the Final Judgment, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, and from otherwise being heard concerning the Settlement, this Order, the Judgment, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses in this or any other proceeding.

18. Pending final determination of whether the Settlement should be approved, Plaintiff, all Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, or prosecute any action that asserts Released Claims against any Released Person.

19. Any Class Member may enter an appearance in the Litigation, at his/her/its own expense, individually or through counsel of his/her/its own choice. If he/she/it does not enter an appearance, he/she/it will be represented by Lead Counsel.

20. All proceedings in the Litigation are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither Plaintiff nor

any Class Member, either directly, representatively or in any other capacity shall commence or prosecute against any of the Released Persons any action or proceeding in any court or tribunal asserting any of the Released Claims.

21.     The passage of title and ownership of the Settlement Fund to the Escrow Agent in accordance with the terms and obligations of the Stipulation is approved.  No person who is not a Class Member or Plaintiff's Counsel shall have any right to any portion of, or in the distribution of, the Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

22.     The contents of the Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis*, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to this Order, the Stipulation, the Plan of Allocation, and/or further orders of the Court.

23.     All reasonable costs incurred in identifying Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation.

24.     If (a) the Settlement is terminated by AbbVie pursuant to ¶8.3 of the Stipulation; or (b) any specified condition to the Settlement set forth in the Stipulation is not satisfied and Lead Counsel or AbbVie elects to terminate the Settlement as provided in the Stipulation, then, in any such event, the terms of ¶¶8.6 and 8.7 of the Stipulation shall apply, and this Order shall be null and void, of no further force or effect, without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity, and each party shall be restored to his, her or its respective position in this Litigation as it existed prior to May ___, 2019.

DATED:

_____

Honorable Robert M. Dow, Jr.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, ) ) ) | No. 14-cv-9465 |
| ) | |
| Plaintiffs, ) | Honorable Robert M. Dow, Jr. |
| ) | |
| v. ) | |
| ) | |
| RICHARD GONZALEZ and ABBVIE INC., ) | |
| ) | |
| Defendants. ) | |

### [PROPOSED] FINAL ORDER AND JUDGMENT

On the ____ day of _____, 2019, a hearing having been held before this Court

pursuant to the Order Preliminarily Approving Settlement and Providing for Notice dated _____,

2019 (the "Preliminary Approval Order"), to determine: (1) whether the terms and conditions of

the Stipulation of Settlement dated May ___, 2019 (the "Stipulation"), are fair, reasonable, and

adequate for the settlement of all claims asserted by the Plaintiff (Dawn Bradley) on behalf of the

Class (as defined in paragraph 2 herein) against the Defendants (AbbVie and Richard Gonzalez)

in the operative complaint now pending in this Court under the above caption (the "Litigation"),

including the release of the Released Persons[1], and should be approved; (2) whether judgment

should be entered dismissing the Litigation on the merits and with prejudice; (3) whether to

---

[1] The Released Persons are the Defendants and each Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

approve the Plan of Allocation as a fair and reasonable method to allocate the Settlement proceeds among the Members of the Class; and (4) whether and in what amount to award Plaintiff's Counsel[2] fees and expenses and Plaintiff's expenses. The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing, substantially in the form approved by the Court, was mailed to all individuals and entities, reasonably identifiable, who purchased or otherwise acquired American Depository Shares ("ADS") or purchased call options or sold put options of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive (the "Class Period"), as shown by the records compiled by the Claims Administrator[3] in connection with its mailing of notice of the Settlement, at the respective addresses set forth in such records, and that a summary notice of the hearing, substantially in the form approved by the Court, was published pursuant to the Preliminary Approval Order as set forth in the Declaration of _____; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested by Plaintiff's Counsel.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Court has jurisdiction over the subject matter of this Litigation and all matters relating to the Settlement.

2.    On _____, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certified a Class, for settlement purposes only, defined as: All Persons who purchased or otherwise acquired American Depositary Shares or purchased call options or sold put options of Shire plc between September 29, 2014 and October 14, 2014, inclusive. Excluded from the Class

---

[2]    Plaintiff's Counsel are Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP.

[3]    The Claims Administrator is Epiq.

are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those Persons who timely and validly excluded themselves therefrom, as identified in Exhibit 1 hereto.

3. Notice of the pendency of this Litigation as a class action and of the proposed Settlement was given to all members of the Class who could be identified with reasonable effort. The Court finds that the form and method of notifying the Class of the pendency of this Litigation as a class action and of the terms and conditions of the proposed Settlement: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of (i) the pendency of the Litigation; (ii) the effect of the proposed Settlement (including the releases to be provided thereunder); (iii) Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiff's Counsel's application for fees and expenses and Plaintiff's expenses; (v) the right to exclude themselves from the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*, as amended, and all other applicable laws and rules.

4. Defendants have complied with the Class Action Fairness Act of 2005, 28 U.S.C. §1715. Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. §1715(b), including notices to the Attorney General of the United States of America, and the Attorneys General of all States in which Members of the Class reside. The notice contains the documents and information required by 28 U.S.C. §1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the requirements of 28 U.S.C. §1715.

5. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the releases provided for therein, and the dismissal with prejudice of the claims asserted in the Litigation), and finds that the Settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the Class. Subject to the terms and provisions of the Stipulation and the conditions therein being satisfied, the parties are directed to consummate the Settlement.

6. All of the claims asserted in the Litigation are hereby dismissed in their entirety with prejudice. The Plaintiff, Defendants and the members of the Class shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

7. The terms of the Stipulation and of this Judgment shall be forever binding on Plaintiff, Defendants, and all other members of the Class (regardless of whether or not any individual member of the Class submits a Claim Form[4] or seeks or obtains a distribution from the

---

[4] The Claim Form is the form for submitting a claim, that each member of the Class must complete and submit to share in a distribution of the Net Settlement Fund. The Net Settlement Fund is the $16.75 million Settlement amount being paid by or on behalf of Defendants minus Plaintiff's Counsel's Court approved fees and expenses, Plaintiff's Court approved fees, the costs to provide notice to the Class and administer the claims made by members of the Class, and any necessary taxes or tax expenses.

Net Settlement Fund), as well as their respective successors and assigns. The Persons listed on Exhibit 1 hereto are excluded from the Class pursuant to their request and are not bound by the terms of the Stipulation or this Judgment.

8.      Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other member of the Class asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation are hereby released by Plaintiff and the members of the Class who have not excluded themselves from the Class (as set forth on Exhibit 1 hereto) against Defendants and their Related Parties (the "Released Claims").[5]

9.      Any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement, are

---

[5] The Related Parties are Defendant's respective former, present or future parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such effective upon entry of this Judgement. Defendants together with the Related Parties are the "Released Persons."

released by Defendants against Plaintiff and the members of the Class (the "Released Defendants' Claims").

10.      Unknown Claims means (a) any and all Released Claims which Plaintiff, Plaintiff's Counsel, or any member of the Class does not know or suspect to exist in his, her, or its favor at the time of this release of the Defendants and their Related Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Plaintiff's Counsel, or any member of the Class, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Plaintiff's Counsel, or members or the Class.

11.      Upon entry of this Judgment Plaintiff, Defendants, and the Class shall be deemed to have, and by operation of this Judgment to have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Plaintiff, Defendants, and the Class shall expressly waive and each of the member of the Class shall be deemed to have, and by operation of this Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Plaintiff, Defendants, and the Class acknowledge that they may hereafter

discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Plaintiff, Defendants, and the Class shall expressly settle and release, and each member of the Class, upon entry of this Judgment, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiff, Defendants, and the Class acknowledge, and the members of the Class shall be deemed by operation of this Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

12.     Upon the entry of this Judgement, Plaintiff and each and all of the members of the Class ("Class Releasors") are hereby permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against Defendants or any Released Persons in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any other claims arising out of, relating to or in connection with, the defense, settlement, or resolution of the Litigation or the Released Claims, regardless of whether such member of the Class executes and delivers a Claim Form.

13.     Upon entry of this Judgment, Plaintiff and each of the members of the Class shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons.  Plaintiff and each member of the Class are bound by this Judgment, including, without limitation, the release of claims as set forth in the Stipulation.  The Released Claims are hereby compromised, settled, released, discharged, and dismissed as against the Released Persons on the merits and with prejudice by virtue of the proceedings herein and this Judgment.

14.     Upon entry of this Judgment, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiff, each and all of the members of the Class, and Plaintiff's Counsel from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Defendants' Claims.

15.     Pursuant to the PSLRA, upon entry of this Judgement, all claims by any individual or entity for contribution or indemnity arising out of the Litigation, however such claims are denominated, shall be barred against the Released Persons.

16.     The Released Persons and their respective counsel may refer to or file the Stipulation and/or this Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or otherwise to enforce the terms of the Settlement.

17.     The Court finds that AbbVie has satisfied its financial obligations under the Stipulation by paying or causing to be paid $16,750,000.00 to the Settlement Fund.

18.     The Court finds and concludes that the Plaintiff, Plaintiff's Counsel, Defendants, and Defendants' counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and/or settlement of this Litigation.

19.     Any Plan of Allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.  Separate orders shall be entered regarding approval of a plan of allocation and Plaintiff's Counsel's application for an award of attorneys' fees and expenses.

20.     Any appeal or any challenge affecting the approval of: (a) the Plan of Allocation submitted by Plaintiff's Counsel; and/or (b) this Court's approval regarding any attorneys' fee and expense applications shall in no way disturb or affect the finality of the other provisions of this Judgment.

21.     There is no just reason for delay in the entry of this Judgment as a final judgment in this Litigation and immediate entry by the Clerk of the Court is expressly directed.

DATED:

_____

Honorable Robert M. Dow, Jr.

EXHIBIT C-1

**Notice of Proposed Settlement of Class Action, Settlement Hearing and Right to Appear**

# If You Acquired Shire plc American Depository Shares (ADS) or Call Options or Sold Put Options between September 29, 2014 and October 14, 2014 You May Be Entitled to Money from a Class Action Settlement

The Settlement will provide a gross amount of $16.75 million to pay claims from investors who purchased or otherwise acquired ADS or purchased call options or sold put options of Shire plc ("Shire") between September 29 and October 14, 2014, inclusive. The Net Settlement Fund (i.e., the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (i) any Taxes, (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court, and (iv) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth on pages XXX below.

The Settlement resolves a lawsuit over the plaintiff's allegation that AbbVie and its CEO ("Defendants") falsely told the market that they intended to proceed with a proposed transaction to acquire Shire through an inversion transaction (the "Combination") after the U.S. Treasury Department had issued a notice of tax changes impacting inversions, when in fact it was reconsidering and ultimately withdrew from the Combination.

The plaintiff agreed to the Settlement because the Class Members will receive a certain and more immediate recovery. The Plaintiff and her attorneys think the Settlement is fair and is what is best for all Class Members.

Plaintiff's damages expert estimates that the conduct at issue in the Action affected approximately 2,292,600 shares of Shire ADS and 2,288,900 Shire Call Options purchased, and 1,876,200 Shire Put Options sold/written, during the Class Period. Based on the total Settlement Amount, if all eligible Settlement Class Members elect to participate in the Settlement, the estimated average recovery would be approximately $ 5.63 per affected share of Shire ADS, $0.13 per affected Shire Call Option, and $1.89 per affected Shire Put Option, before the deduction of any Court-approved fees, expenses, and costs as described in this Notice.[1] Settlement Class Members should note, however, that the foregoing average recovery per share or option is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, which Shire Securities they purchased, when and at what prices they purchased/acquired or sold/wrote their Shire Securities, and the total number of valid Claim Forms submitted. Distributions to eligible Settlement Class Members will be made based on the Plan of Allocation set forth herein (see pages XXX below) or such other plan of allocation as may be approved by the Court.

The parties do not agree on the average amount of damages per share or option that would be recoverable if Lead Plaintiff were to prevail in the Action. Among other things, the Defendants do not

---

[1]     All options-related amounts here are per share or unit of the underlying security (i.e., 1/100 of a contract).

agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

The Court has appointed the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP to represent the Class (Plaintiff's Counsel). Plaintiff's Counsel have been litigating this case since 2014 without any payment and have advanced all the funds to pay the necessary expenses in connection with the case. Plaintiff's Counsel will seek an award of attorneys' fees not to exceed 30% of the Settlement Fund plus reasonable expenses, which will include reasonable costs incurred by Lead Plaintiff Dawn Bradley directly related to her representation of the Class. Class Members are not personally liable for any such fees or expenses. If the Court approves Lead Counsel's fee and expense application, assuming claims are filed for all affected shares and options, the estimated average amount of fees and expenses would be approximately $1.94 per affected share of Shire ADS, $0.05 per affected Shire Call Option, and $0.65 per affected Shire Put Option.

Jennifer Sarnelli of Gardy & Notis, LLP, 126 E. 56th Street, 8th Floor, New York, NY 10024, 212.905.0509, jsarnelli@gardlaw.com, one the attorneys for the Class, is available to answer questions regarding the Settlement.

Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
| --- | --- |
| SUBMIT A CLAIM FORM | By **Month 00, 2019**. This is the only way to get a payment |
| OBJECT | Write to the Court by **Month 00, 2019** about why you don't like the Settlement. |
| EXCLUDE YOURSELF | Ask to be excluded from the Settlement by **Month 00, 2019**. You will not be eligible to get a payment and will not be bound by the Release. |
| DO NOTHING | Get no payment. Give up your rights. |

These rights and options—and the deadlines to exercise them—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after objections and appeals, if any, are resolved. Please be patient.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

2

| 1. Why did I get this notice? |
|---|

This Notice is being sent to you pursuant to an Order of the Court because you or someone in your family may have acquired Shire ADS or purchased call options or sold put options of Shire between September 29, 2014 and October 14, 2014, inclusive.

You got this notice because you have a right to know about the proposed Settlement of this lawsuit, and about all of your options, before the Court decides whether to approve the Settlement.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United State District Court for the Northern District of Illinois (the "Court"), and the case is called *Rubinstein v. Gonzalez*, No. 14-cv-9465 (the "Lawsuit"). The judge presiding over this case is Judge Robert M. Dow Jr. The person who brought the suit, Dawn Bradley, is called the Plaintiff, and the company and people she sued, AbbVie, Inc. and Richard Gonzalez, are called the Defendants.

If the Court approves the Settlement and the Settlement becomes effective: (a) the Lawsuit will be dismissed with prejudice, (b) all members of the Class will be deemed to have released the Released Claims (a full copy of the Released Claims is in question XXX), and (c) the Settlement Administrator approved by the Court will make payments pursuant to the Settlement.[2]

| 2. What is this lawsuit about? |
|---|

The following summary does not constitute findings of the Court. The Court has made no findings about the following matters and these descriptions are not opinions of the Court as to the merits of any of the claims or defenses raised by any of the parties.

The plaintiff alleges as follows: AbbVie entered into an agreement to acquire Shire in what is called an inversion transaction which would result in AbbVie becoming a foreign Company which would provide certain tax benefits. However, on September 22, 2014, the US Treasury Department issued a notice of a tax rule change that would materially alter those benefits. The Lawsuit claims that despite knowing that the Company would not proceed with the Combination, Defendants told investors on September 29, 2014 that he was "more energized than ever" and "more confident than ever" about the Combination, when in fact he knew the Company was reconsidering acquiring Shire. On October 14, 2014, AbbVie announced it was reconsidering the Combination and ultimately withdrew from the Combination the next day.

---

[2] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated May X, 2019 (the "Settlement Stipulation"), which is available on the Settlement website at www.AbbVieSettlement.com.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

Plaintiff claimed that as a result of Gonzalez's statements investors believed that the Combination was moving forward and therefore acquired Shire securities based on this reassurance. On October 14, 2014, after the Company announced it was reconsidering the Combination, the Shire share price dropped dramatically causing harm to the Class. Defendants have denied, and continue to deny, all allegations of wrongdoing, fault, liability or damage.

Plaintiff's counsel reviewed thousands of documents, took numerous depositions and consulted with experts about the Lawsuit and both Defendants and Plaintiff presented arguments to the Court about the merits of the claims. The Court decided not to dismiss the Lawsuit in its entirety, but did not make any final decisions about the merits of the case.

## 3. Why is this a class action?

In a class action, one or more people (in this case, Plaintiff Dawn Bradley), sue on behalf of people who have similar claims. All these people are a Class or Class Members.

## 4. Why is there a settlement?

Although the Plaintiff and her counsel think they could have won at trial, the Defendants think the Plaintiff would not have won anything at a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, the parties avoid the cost of a trial, and the Class Members will receive money. The Plaintiff and her attorneys think the Settlement is fair and is what is best for all Class Members.

Plaintiff's counsel conducted an investigation and pursued extensive discovery relating to the claims and the underlying events and transactions alleged in the Lawsuit. Plaintiff's counsel have analyzed the evidence obtained during their investigation, and the extensive discovery obtained in the Lawsuit, and have also researched the law with respect to the claims asserted in the Lawsuit and the potential defenses. Plaintiff's counsel consulted with an expert regarding the potential damages to the Class, and considered the views of the expert retained by Defendants. Plaintiff's counsel also considered the Court's partial denial of Defendants' motion to dismiss the Lawsuit.

In negotiating and evaluating the terms of the Settlement, Plaintiff and Plaintiff's Counsel considered the significant legal and factual defenses to the Plaintiff's claims and the expense, length, and risk of pursuing their claims through trial and appeals. While Plaintiff believes that the Defendants recklessly omitted material information from the market about the fact that it was reconsidering the Combination and falsely reassured the market that the Combination would proceed, Defendants have argued that they acted appropriately and continue to deny all allegations of wrongdoing, fault, liability or damage. In light of the risks of continued litigation, the amount of the Settlement and the immediacy of recovery to the Class, Plaintiff and Plaintiff's Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class. Plaintiff and Plaintiff's Counsel believe that the Settlement provides an extraordinary benefit to the Class, namely $16.75 million in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Lawsuit would produce a smaller, or no recovery after trial and appeals, possibly years in the future.

The Court has not made any final decisions about Plaintiff's claims or Defendants' defenses.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

| **5. How do I know if I am part of the Settlement?** |
| --- |

If you are a member of the Class, you are subject to the Settlement. The Class proposed to the Court consists of:

> All Persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options (collectively, "Securities") of Shire plc ("Shire") between September 29, 2014 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, and persons that exclude themselves from the Class.

Please note: receipt of this notice does not mean that you are a Class Member or that you will be entitled to receive money from the Settlement. If you wish to be eligible to get money from the Settlement, you are required to submit the claim form attached hereto and make sure it is postmarked no later than **Month 00, 2019**.

| **6. What does the settlement provide?** |
| --- |

In consideration for the full and final settlement and dismissal with prejudice of the Lawsuit, and the release by the Class Members of any and all Released Claims, the Defendants have agreed to pay $16.75 million cash into an interest-bearing escrow account for the benefit of the Class to be divided, after payment of fees and expenses, among all Class Members who purchased or otherwise acquired comprised of all persons who purchased or otherwise acquired ADS or purchased call options or sold put options of Shire between September 29 and October 14, 2014 and who send in a valid claim form.

| **7. How much will my payment be?** |
| --- |

Your share of the fund will depend on several things, including, among other things, how many Class Members timely send in valid Claim Forms; the amount of Shire's ADS or call options you purchased or otherwise acquired, or the amount of put options you sold, during the Class Period; the prices and dates of those purchases or acquisitions; and the prices and dates of any sales you made. The Plan of Allocation below will provide more detail on your potential recovery.

As discussed above, the Settlement provides $16.75 million in cash for the benefit of the Class. The Settlement Amount and any interest it earns constitute the "Settlement Fund." The Settlement Fund, after deduction of Court-approved attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund." If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – i.e., members of the Class who timely submit valid Claim Forms that are accepted for payment by the Court – in accordance with this proposed Plan of Allocation ("Plan of Allocation" or

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

5

"Plan") or such other plan of allocation as the Court may approve. The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on the settlement website, www.AbbVieSettlement.com.

The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The Plan of Allocation is not a formal damage analysis, and the calculations made in accordance with the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial. Nor are the calculations in accordance with the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement, because the Settlement Fund is less than the total losses alleged to be suffered by Class Members. The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making pro rata allocations of the Net Settlement Fund. An Authorized Claimant's Recognized Claim will be the amount used to calculate the Authorized Claimant's pro rata share of the Net Settlement Fund. The pro rata share will be the Authorized Claimant's Recognized Claim divided by the total of the Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

The Plan of Allocation was developed in consultation with Plaintiff's damages expert. In developing the Plan of Allocation, the damages expert calculated the estimated amount of alleged artificial inflation (or deflation) in the per-share prices of Shire's ADS and options that was allegedly caused by Defendants' alleged materially false and misleading statements and omissions, adjusting those price changes for factors that were attributable to market or industry forces, and for non-fraud related information.

In order to have recoverable damages under the federal securities laws, disclosure of the alleged misrepresentation and/or omission must be the cause of the decline in the price of the security. In this Action Plaintiff alleges that corrective information allegedly impacting the prices of Shire's securities (referred to as a "corrective disclosure") was released to the market on October 14, 2014 which impacted the market price of Shire's securities in a statistically significant manner and removed the alleged artificial inflation (or deflation for put options). Accordingly, in order to have a compensable loss in this Settlement, Shire's ADS or call options must have been purchased or otherwise acquired during the Class Period and held through October 14, 2014 and, with respect to put options, those options must have been sold (written) during the Class Period and not closed through October 14, 2014.

THE PLAN OF ALLOCATION

In this case, Plaintiff alleged that Defendants made false statements and omitted material facts during the period between September 29, 2014, through and including October 14, 2014, which had the effect of artificially inflating the prices of Shire ADSs and Shire Call Options and artificially deflating the price of Shire Put Options ("Shire Securities"). Plaintiff alleged that artificial inflation was removed from Shire ADSs and Call Options and artificial deflation was removed from Shire Put Options on October 15, 2014, in reaction to information disclosed on October 14, 2014 (after market hours).

In order to have a "Recognized Loss Amount" under the Plan with respect to Shire ADSs and Call Options, the security must have been purchased during the Class Period and held through the alleged disclosure that resulted in a statistically significant change in market price, and with respect to Put Options, those

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

6

options must have been sold (written) during the Class Period and not closed through the alleged disclosure that resulted in a statistically significant change in market price.

Shire ADSs held as of the close of trading on September 26, 2014 and sold during the Class Period were sold at artificially inflated prices but purchased at prices that were not artificially inflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such ADS.

Shire Call Options held (i.e. open positions) as of the close of trading on September 26, 2014 and sold (closed) during the Class Period were sold at artificially inflated prices but purchased at prices that were not artificially inflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such Shire Call Option.

Shire Put Options sold (written) prior to the close of trading on September 26, 2014 and closed (through purchase or exercise) during the Class Period were closed at artificially deflated prices but sold at prices that were not artificially deflated by the alleged fraud. A "Recognized Gain Amount" will be calculated for each such Shire Put Option.

CALCULATION OF RECOGNIZED LOSS AND RECOGNIZED GAIN AMOUNTS

With respect to shares of Shire ADSs, Call Options, and Put Options, a Recognized Loss Amount will be calculated by the Claims Administrator as set forth below for each purchase or other acquisition of Shire ADSs and Call Option contracts and each sale of Shire Put Option contracts from September 29, 2014, through and including October 14, 2014, that is listed in the Claim Form and for which adequate documentation is provided, and a Recognized Gain Amount will be calculated by the Claims Administrator as set forth below for each sale of Shire ADSs and Call Option contracts and each purchase of Shire Put Option contracts from September 29, 2014, through and including October 14, 2014, that is listed in the Claim Form and for which adequate documentation is provided.

SHIRE ADS CALCULATIONS

For each Shire ADS purchased or otherwise acquired from September 29, 2014 through and including October 14, 2014, the Recognized Loss Amount for each such ADS shall be $50.69, the dollar artificial inflation applicable to each such ADS on the date of purchase/acquisition.

For each Shire ADS sold from September 29, 2014 through and including October 14, 2014 the Recognized Gain Amount for each such ADS shall be $50.69, the dollar artificial inflation applicable to each such ADS on the date of sale.

SHIRE CALL AND PUT OPTION CALCULATIONS

Exchange-traded options are traded in units called "contracts" that entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the underlying security, which in this case are Shire ADSs. Throughout this Plan, all price quotations are per share of the underlying security (i.e., 1/100 of a contract).

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

7

Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (i.e., 1/100 of a contract) for each series of Shire Call Options and the dollar artificial deflation per share (i.e., 1/100 of a contract) for each series of Shire Put Options has been calculated by Lead Plaintiff's damages expert.

There are two tables included at the end of this Notice set forth the eligible option series. Table 1 sets forth the dollar amount of artificial inflation per share in Shire Call Options during the Class Period. Table 2 below sets forth the dollar amount of artificial deflation per share in Shire Put Options during the Class Period. Tables 1 and 2 list only series of exchange traded Shire Options that expired on or after October 15, 2014 – the date of the alleged corrective disclosure. Transactions in Shire Options that expired before October 15, 2014 have a Recognized Loss Amount of zero and a Recognized Gain Amount of zero under the Plan of Allocation. Any Shire Option series not listed on Table 1 or Table 2 has a Recognized Loss Amount of zero and a Recognized Gain Amount of zero under the Plan of Allocation.

For each Shire Call Option purchased or otherwise acquired from September 29, 2014 through and including October 14, 2014, the Recognized Loss Amount for each such share shall be the dollar amount of artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in Table 1 below, multiplied by 0.4.

For each Shire Call Option held as of the close of trading on September 26, 2014 and closed from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial inflation applicable to each such share as set forth in Table 1 below, multiplied by 0.4.

For each Shire Put Option sold (written) from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial deflation applicable to each such share as set forth in Table 2 below, multiplied by 0.4.

For each Shire Put Option sold as of the close of trading on September 26, 2014 and closed (through purchase or exercise) from September 29, 2014 through and including October 14, 2014, the Recognized Gain Amount for each such share shall be the dollar amount of artificial deflation applicable to each such share as set forth in Table 1 below, multiplied by 0.4.

ADDITIONAL PROVISIONS

FIFO Matching: If a Claimant has more than one purchase/acquisition or sale of Shire ADSs, Call Options, or Put Options during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis. For Shire ADSs and Call Options, Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. For Shire Put Options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period and then against Put Options sold (written) during the Class Period in chronological order.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

Purchase/Acquisition/Sale Dates and Prices: Purchases or acquisitions and sales of Shire ADSs, Call Options, or Put Options shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. All purchase or acquisition and sale prices shall exclude any fees, taxes, commissions, or other costs. The receipt or grant by gift, inheritance or operation of law of Shire ADSs, Call Options, or Put Options during the Class Period shall not be deemed a purchase, acquisition, or sale for the calculation of a Claimant's Recognized Loss Amount pursuant to the calculations set forth above, and such receipt or grant shall not be deemed an assignment of any claim relating to the purchase/acquisition or sale of such Shire Securities, unless (i) the donor or decedent purchased or otherwise acquired such securities during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Shire Securities.

Short Sales: With respect to Shire ADSs, the date of covering a short sale is deemed to be the date of purchase or acquisition of the stock. The date of a short sale is deemed to be the date of sale of the respective Shire ADSs. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on short sales, including purchases covering short sales, during the Class Period is zero. In the event that a Claimant has an opening short position in Shire ADSs, the earliest Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

If a Settlement Class Member has "written" Shire Call Options, thereby having a short position in the Call Options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the Call Option. The date on which the Call Option was written is deemed to be the date of sale of the Call Option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "written" Call Options and any purchased Call Options used to cover the position is zero. In the event that a Claimant has an opening written position in Shire Call Options, the earliest Class Period purchases or acquisitions of like Call Options shall be matched against such opening written position, and not be entitled to a recovery, until that written position is fully covered.

If a Settlement Class Member has purchased or acquired Shire Put Options, thereby having a long position in the Put Options, the date of purchase or acquisition is deemed to be the date of purchase or acquisition of the Put Option. The date on which the Put Option was sold, exercised, or expired is deemed to be the date of sale of the Put Option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on such purchased or acquired Put Options is zero. In the event that a Claimant has an opening long position in Shire Put Options, the earliest Class Period sales or dispositions of like Put Options shall be matched against such opening position, and not be entitled to a recovery, until that long position is fully covered.

Eligible Securities: Shire ADSs, Call Options, and Put Options are the only securities eligible for recovery under the Plan of Allocation. With respect to Shire ADSs purchased or sold through the exercise of an option, the purchase/sale date of the Shire ADSs is the exercise date of the option and the purchase/sale price is the exercise price of the option.

Calculation and Distribution of Recognized Claims: The sum of a Claimant's Recognized Loss Amounts minus the sum of a Claimant's Recognized Gain Amounts will be the Claimant's "Recognized Claim." To

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

9

the extent that the calculation of a Claimant's Recognized Claim results in a negative number, the Claimant's Recognized Claim will be zero.

An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's pro rata share of the Net Settlement Fund. If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its pro rata share of the Net Settlement Fund. The pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment, the excess amount in the Net Settlement Fund shall be distributed pro rata to all Authorized Claimants entitled to receive payment.

The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

Class Members who do not submit valid Claim Forms will not share in the distribution of the Net Settlement Fund, however they will nevertheless be bound by the Settlement and Judgment of the Court dismissing this Action, unless they have timely and validly sought exclusion.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund at least four months after the initial distribution of such funds shall be re-distributed on a pro rata basis to Class Members who have cashed their initial distributions in an equitable and economical manner, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer economical to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund, shall be contributed to Public Justice, a nonprofit legal advocacy organization.

Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Shire, their counsel, Lead Plaintiff, Lead Counsel, their damages expert, the Claims Administrator, or any other agent designated by Lead Counsel, arising from determinations or distributions to Claimants made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court. Shire and their counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, calculation, or payment of any Claim or any actions taken (or not taken) by the Claims Administrator, the

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

10

payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

### 8.  How can I get a payment?

To qualify for payment, you must submit in the claim form attached to this Notice or complete a claim form on the Settlement website at www.AbbVieSettlement.com.  Read the instructions carefully, fill out the form, sign it, and mail it, email it or submit online no later than **Month 00, 2019**.

### 9.  When would I get my payment?

The Court will hold a hearing at **0:00 __.m. on Month 00, 2019**, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606, to decide whether to approve the Settlement.  If the Court approves the Settlement after that, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a claim form will be informed of the progress of the Settlement on the Settlement website.  Please be patient.

### 10.  How Does the Settlement Affect My Rights?

If the Settlement is approved, you can't sue or be part of any other lawsuit against Defendants about the legal issues in this case, regardless of whether or not you submit a claim form or get paid unless you exclude yourself as explained in question X.  It also means that all of the Court's orders will apply to you and legally bind you.

As a result of the Settlement you can no longer sue any of the Defendants for any of the claims made in the Lawsuit.  Giving up these claims is called a release.  The full release language agreed to in connection with the Lawsuit is as follows:

The Released Claims are any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADS or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation.  "Released Claims" does not include any claims to enforce the Settlement.  "Released Claims" includes "Unknown Claims" as defined in ¶1.31 hereof.

"Unknown Claims" means (a) any and all Released Claims which Plaintiff, Plaintiff's Counsel, or any Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class;

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Plaintiff's Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Plaintiff's Counsel, or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

## 12. Do I have a lawyer in this case?

The Court appointed the law firms of Gardy & Notis, LLP and Wolf Haldenstein Adler Freeman & Herz LLP Co-Lead Counsel to represent you and other Class Members. These lawyers are called Plaintiff's Counsel. You will not be charged any out of pocket money for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13. How will the lawyers be paid?

Plaintiff's Counsel will ask the Court to approve payment of up to 30% of the Settlement amount plus out-of-pocket expenses for attorneys' fees and expenses not to exceed $750,000. Plaintiff will also request reimbursement of time and expenses of $10,000 for the work she performed on behalf of the Class. Plaintiff's counsel have been working on this case since 2014, without any payment. Plaintiff's counsel successfully opposed Defendants' motion to dismiss the Lawsuit, engaged in several discovery

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

12

motions and conferences throughout 2017 and 2018, including four motions to compel, and two motions for protective order, reviewed thousands of documents from Defendants and third parties, took 11 depositions, and consulted with an expert about the Lawsuit. The Court did not make any final decisions about the merits of the case. The fees would pay Plaintiff's Counsel for investigating the facts, litigating the case, and negotiating the Settlement that achieves a $16.75 million recovery. The expenses are to reimburse Plaintiff's Counsel for out of pocket expenses incurred in litigating the Lawsuit. The Court may award less than these amounts. The amount of the fees and expenses and Plaintiff's fee will be deducted from the Settlement Fund. The costs to administer the Settlement will also be deducted from the Settlement Fund.

| **14. How do I tell the Court that I don't like the Settlement?** |
| --- |

You can object to the Settlement if you don't like any part of it, including the request by Plaintiff's Counsel for fees and reimbursement of expenses as described above. You can give reasons why you think the Court should not approve the Settlement or the request for fees/expenses. The Court will consider your views. To object, you must send a signed letter saying that you wish to comment on or object to the proposed Settlement, Plan of Allocation, and/or fee and expense application in the AbbVie Securities Settlement. Include your name, mailing address, daytime telephone number, e-mail address, and your signature, state the number of shares of Shire ADS or options owned as of the beginning of trading on September 29, 2014 (the first day of the Class Period), identify the date(s), price(s), and number(s) of shares of Shire ADS or options you purchased, acquired, and sold during the Class Period and state your comments or the reasons why you object to the proposed Settlement, Plan of Allocation and/or fee and expense application, including any legal support for such objection. You must also include copies of documents demonstrating such purchase(s), acquisition(s), and/or sale(s). Your comments or objection must be filed with the Court and mailed or delivered to each of the following addresses such that it is received no later than **Month 00, 2019:**

Jennifer Sarnelli                                   Joshua Z. Rabinovitz
Gardy & Notis, LLP                              Kirkland & Ellis, LLP
Tower 56                                             300 North LaSalle
126 East 56th Street, 8th Floor              Chicago, IL 60654
New York, NY 10022

| **15. How do I exclude myself from the Class?** |
| --- |

To exclude yourself from the Class and the Settlement, you must send a letter by First-Class Mail stating that you "request exclusion from the Class in the AbbVie Securities Settlement." You cannot exclude yourself by telephone or e-mail. Your letter must include your name, address, telephone number, and your signature. In addition, you must also provide your purchases, acquisitions, and sales of Shire ADS or options during the Class Period, including the dates, the number of shares of Shire ADS or options purchased, acquired, or sold and price paid or received for each such purchase, acquisition or sale. You must submit your exclusion request so that it is postmarked no later than **Month 00, 2019** to:

Epiq

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

P.O. Box XXXX
Portland, OR 97208-XXXX

Your exclusion request must comply with these requirements in order to be valid and effective. Plaintiff's Counsel or the Claims Administrator may, at their discretion, request from any person or entity requesting exclusion documentation sufficient to prove his, her, or its purchases, acquisitions, and/or sales of Shire ADS or options during the Class Period.

If you ask to be excluded, you will not receive any payment from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Persons about the Released Claims in the future.

Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be Members of the Class in an amount that exceeds an amount agreed to by Plaintiff and Defendants.

### 16. What is the difference between objecting and excluding yourself?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class.

Excluding yourself is telling the Court that you do not want to be paid and do not want to release any claims you think you may have against Defendants and their Related Parties. If you exclude yourself, you cannot object to the Settlement because it does not affect you.

### 17. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Settlement Hearing at **0:00 __.m. on Month 00, 2019**, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate and whether to approve the plan of allocation. The Court will also consider how much to pay to Plaintiff's Counsel. If there are objections, the Court will consider them. After the hearing, the Court will make decisions whether to approve these matters relating to the Settlement. We do not know how long these decisions will take.

### 18. Do I have to come to the hearing?

No. Plaintiff's Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection with the proper documentation and in the manner described above on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

Unless the Court orders otherwise, any Class Member who does not object in the manner described above and provide the proper proof of membership in the Class will be deemed to have waived any

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

14

objection and will be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, Plaintiff's Counsel's request for an award of attorneys' fees and reimbursement of expenses, or Plaintiff's request for an incentive award. Class Members do not need to appear at the hearing or take any other action to indicate their approval.

## 19. What happens if I do nothing at all?

If you do nothing, you will get no money from the Settlement. If the Settlement is approved you won't be able to start a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

## 20. Are there more details about the Settlement?

This notice summarizes the Settlement. More details are in the Settlement Stipulation. For more detailed information about the matters involved in the Lawsuit, you are referred to the papers on file in the Lawsuit, including the Settlement Stipulation, which may be inspected during regular business hours of each business day at the XXXX. Copies of the Settlement Stipulation and any related orders entered by the Court will be posted on the settlement website at www.AbbVieSettlement.com. All questions about this Notice or the Claim Form should be directed to the Settlement Administrator by visiting the website at www.AbbVieSettlement.com, or by emailing info@AbbVieSettlement.com, or calling 1-XXX-XXX-XXXX.

## 21. How do I get more information?

You can call the Settlement Administrator at 1-XXX-XXX-XXXX toll free; write to AbbVie Securities Litigation, c/o CLAIMS ADMIN ADDREDSS, email the Claims Administrator at info@AbbVieSettlement.com, contact Jennifer Sarnelli of Gardy & Notis, LLP (one of counsel for Plaintiff) at jsarnelli@gardylaw.com or visit the website www.AbbVieSettlement.com, where you will find answers to common questions about the Settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible to get money from the Settlement. PLEASE DO NOT CALL OR WRITE THE COURT.

## NOTICE TO PERSONS OR ENTITIES HOLDING RECORD OWNERSHIP ON BEHALF OF OTHERS.

If you held Shire ADS or options during the Class Period for the beneficial interest of a person or entity other than yourself, within seven (7) business days of receipt of this Notice, you must either (a) forward the Notice and claim form to all such beneficial owners; or (b) provide a list of the names and addresses of all such beneficial owners to AbbVie Securities Litigation, c/o Name, Address, or by email to info@AbbVieSettlement.com. If you choose the second option, the Settlement Administrator will send copies of the Notice and the claim form to the beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Settlement Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice and the claim form may also be obtained from the

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

15

settlement website maintained by the Settlement Administrator, www.AbbVieSettlement.com, by calling the Settlement Administrator at 1-XXX-XXX-XXXX.

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

16

**Table 1.  Shire Call Option Artificial Inflation per Share by Option Series**

| Expiration Date | Strike Price | Artificial Inflation per Share | Expiration Date | Strike Price | Artificial Inflation per Share | Expiration Date | Strike Price | Artificial Inflation per Share |
|---|---|---|---|---|---|---|---|---|
| 10/18/2014 | $170.00 | $62.11 | 11/14/2014 | $232.50 | $18.73 | 1/17/2015 | $260.00 | $6.20 |
| 10/18/2014 | $175.00 | $59.43 | 11/14/2014 | $242.50 | $11.44 | 1/17/2015 | $265.00 | $5.76 |
| 10/18/2014 | $225.00 | $19.32 | 11/14/2014 | $260.00 | $1.85 | 1/17/2015 | $270.00 | $2.65 |
| 10/18/2014 | $235.00 | $10.38 | 11/14/2014 | $265.00 | $0.10 | 1/17/2015 | $275.00 | $2.09 |
| 10/18/2014 | $240.00 | $7.12 | 11/14/2014 | $270.00 | $1.36 | 1/17/2015 | $280.00 | $0.32 |
| 10/18/2014 | $245.00 | $3.77 | 11/22/2014 | $205.00 | $36.84 | 1/17/2015 | $290.00 | $0.51 |
| 10/18/2014 | $250.00 | $1.80 | 11/22/2014 | $235.00 | $17.88 | 1/17/2015 | $295.00 | $0.10 |
| 10/18/2014 | $252.50 | $1.63 | 11/22/2014 | $250.00 | $7.51 | 1/17/2015 | $300.00 | $0.24 |
| 10/18/2014 | $255.00 | $0.10 | 11/22/2014 | $255.00 | $5.49 | 4/17/2015 | $205.00 | $37.47 |
| 10/18/2014 | $257.50 | $0.02 | 11/22/2014 | $260.00 | $3.35 | 4/17/2015 | $245.00 | $16.33 |
| 10/24/2014 | $227.50 | $17.98 | 11/22/2014 | $265.00 | $1.41 | 4/17/2015 | $255.00 | $11.01 |
| 10/24/2014 | $247.50 | $3.89 | 11/22/2014 | $270.00 | $1.19 | 4/17/2015 | $260.00 | $8.46 |
| 10/24/2014 | $255.00 | $0.34 | 11/22/2014 | $275.00 | $0.61 | 4/17/2015 | $265.00 | $6.12 |
| 10/31/2014 | $225.00 | $20.82 | 11/28/2014 | $255.00 | $5.88 | 4/17/2015 | $275.00 | $2.31 |
| 10/31/2014 | $230.00 | $16.67 | 1/17/2015 | $180.00 | $49.76 | 4/17/2015 | $280.00 | $0.83 |
| 10/31/2014 | $232.50 | $14.82 | 1/17/2015 | $225.00 | $25.66 | 4/17/2015 | $285.00 | $0.05 |
| 10/31/2014 | $235.00 | $13.32 | 1/17/2015 | $230.00 | $21.92 | 1/15/2016 | $225.00 | $26.34 |
| 10/31/2014 | $240.00 | $9.31 | 1/17/2015 | $235.00 | $19.39 | 1/15/2016 | $230.00 | $24.35 |
| 10/31/2014 | $260.00 | $0.19 | 1/17/2015 | $240.00 | $16.57 | 1/15/2016 | $235.00 | $22.06 |
| 11/7/2014 | $230.00 | $17.84 | 1/17/2015 | $245.00 | $14.07 | 1/20/2017 | $290.00 | $5.15 |
| 11/7/2014 | $257.50 | $2.14 | 1/17/2015 | $250.00 | $11.08 | | | |
| 11/14/2014 | $225.00 | $22.55 | 1/17/2015 | $255.00 | $8.77 | | | |

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

17

**Table 2. Shire Put Option Artificial Deflation per Share by Option Series**

| Expiration Date | Strike Price | Artificial Deflation per Share | Expiration Date | Strike Price | Artificial Deflation per Share | Expiration Date | Strike Price | Artificial Deflation per Share |
|---|---|---|---|---|---|---|---|---|
| 10/18/2014 | $140.00 | $0.51 | 10/24/2014 | $267.50 | $72.41 | 11/22/2014 | $265.00 | $69.79 |
| 10/18/2014 | $145.00 | $1.07 | 10/24/2014 | $270.00 | $72.41 | 11/22/2014 | $270.00 | $70.95 |
| 10/18/2014 | $150.00 | $1.97 | 10/31/2014 | $220.00 | $46.90 | 11/22/2014 | $275.00 | $72.17 |
| 10/18/2014 | $155.00 | $2.89 | 10/31/2014 | $225.00 | $51.08 | 11/22/2014 | $280.00 | $72.46 |
| 10/18/2014 | $160.00 | $4.74 | 10/31/2014 | $237.50 | $59.82 | 11/22/2014 | $285.00 | $72.46 |
| 10/18/2014 | $165.00 | $6.39 | 10/31/2014 | $240.00 | $61.33 | 11/28/2014 | $230.00 | $51.08 |
| 10/18/2014 | $170.00 | $8.99 | 10/31/2014 | $247.50 | $65.75 | 1/17/2015 | $90.00 | $2.31 |
| 10/18/2014 | $180.00 | $15.45 | 10/31/2014 | $250.00 | $66.97 | 1/17/2015 | $100.00 | $1.07 |
| 10/18/2014 | $185.00 | $19.15 | 10/31/2014 | $262.50 | $71.15 | 1/17/2015 | $130.00 | $2.16 |
| 10/18/2014 | $190.00 | $23.38 | 10/31/2014 | $270.00 | $72.26 | 1/17/2015 | $140.00 | $5.22 |
| 10/18/2014 | $195.00 | $27.19 | 10/31/2014 | $275.00 | $72.22 | 1/17/2015 | $150.00 | $7.82 |
| 10/18/2014 | $200.00 | $31.56 | 11/7/2014 | $227.50 | $51.95 | 1/17/2015 | $180.00 | $20.80 |
| 10/18/2014 | $205.00 | $35.74 | 11/14/2014 | $240.00 | $58.85 | 1/17/2015 | $185.00 | $23.59 |
| 10/18/2014 | $210.00 | $39.36 | 11/14/2014 | $265.00 | $70.42 | 1/17/2015 | $200.00 | $31.25 |
| 10/18/2014 | $215.00 | $44.08 | 11/14/2014 | $270.00 | $71.34 | 1/17/2015 | $205.00 | $34.26 |
| 10/18/2014 | $220.00 | $48.89 | 11/14/2014 | $275.00 | $72.12 | 1/17/2015 | $210.00 | $37.47 |
| 10/18/2014 | $222.50 | $49.59 | 11/22/2014 | $135.00 | $2.04 | 1/17/2015 | $215.00 | $40.87 |
| 10/18/2014 | $225.00 | $52.97 | 11/22/2014 | $140.00 | $2.14 | 1/17/2015 | $220.00 | $44.56 |
| 10/18/2014 | $230.00 | $58.12 | 11/22/2014 | $145.00 | $3.52 | 1/17/2015 | $225.00 | $46.65 |
| 10/18/2014 | $232.50 | $59.41 | 11/22/2014 | $150.00 | $4.30 | 1/17/2015 | $240.00 | $55.55 |
| 10/18/2014 | $235.00 | $61.60 | 11/22/2014 | $155.00 | $6.12 | 1/17/2015 | $245.00 | $58.07 |
| 10/18/2014 | $237.50 | $63.44 | 11/22/2014 | $180.00 | $19.34 | 1/17/2015 | $255.00 | $63.47 |
| 10/18/2014 | $240.00 | $65.70 | 11/22/2014 | $185.00 | $22.01 | 1/17/2015 | $270.00 | $69.30 |
| 10/18/2014 | $242.50 | $67.74 | 11/22/2014 | $190.00 | $25.17 | 4/17/2015 | $170.00 | $18.22 |
| 10/18/2014 | $245.00 | $68.79 | 11/22/2014 | $195.00 | $28.33 | 4/17/2015 | $180.00 | $23.04 |
| 10/18/2014 | $247.50 | $70.27 | 11/22/2014 | $200.00 | $31.27 | 4/17/2015 | $190.00 | $27.85 |
| 10/18/2014 | $250.00 | $70.71 | 11/22/2014 | $205.00 | $34.36 | 4/17/2015 | $195.00 | $30.32 |
| 10/18/2014 | $252.50 | $71.15 | 11/22/2014 | $210.00 | $38.10 | 4/17/2015 | $200.00 | $32.66 |
| 10/18/2014 | $255.00 | $72.70 | 11/22/2014 | $215.00 | $41.45 | 4/17/2015 | $210.00 | $37.86 |
| 10/18/2014 | $257.50 | $72.60 | 11/22/2014 | $220.00 | $45.10 | 4/17/2015 | $220.00 | $43.25 |
| 10/18/2014 | $260.00 | $72.75 | 11/22/2014 | $225.00 | $48.31 | 4/17/2015 | $225.00 | $45.88 |
| 10/18/2014 | $262.50 | $72.51 | 11/22/2014 | $230.00 | $51.17 | 4/17/2015 | $240.00 | $54.14 |
| 10/18/2014 | $265.00 | $72.90 | 11/22/2014 | $240.00 | $57.54 | 4/17/2015 | $260.00 | $63.71 |
| 10/24/2014 | $237.50 | $60.94 | 11/22/2014 | $245.00 | $60.70 | 4/17/2015 | $265.00 | $65.80 |
| 10/24/2014 | $245.00 | $66.14 | 11/22/2014 | $250.00 | $62.88 | 1/15/2016 | $265.00 | $62.45 |
| 10/24/2014 | $247.50 | $67.55 | 11/22/2014 | $255.00 | $65.51 | | | |
| 10/24/2014 | $260.00 | $71.97 | 11/22/2014 | $260.00 | $67.89 | | | |

Questions? Visit www.AbbVieSettlement.com. Email info@AbbVieSettlement.com. Call 1-XXX-XXX-XXXX

18

**AbbVie Securities Litigation**
**Settlement Administrator**
**c/o Epiq**
**P.O. Box _____**
**Portland, OR 97208-\_\_\_\_**
**www.AbbVieSettlement.com**

## CLAIM FORM

To be potentially eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this claim form. **This claim form must be postmarked no later than \_\_\_\_ \_\_, 2019.**

Failure to submit your claim form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

**Do not mail or deliver your claim form to the Court, the parties to the Action, or their counsel. Submit your claim form only to the Settlement Administrator at the address set forth above.**
=

| TABLE OF CONTENTS | PAGE # |
| --- | --- |
| GENERAL INSTRUCTIONS | \_ |
| PART I – CLAIMANT IDENTIFICATION | \_ |
| PART II - TRANSACTIONS IN SHIRE ADSs | \_ |
| PART III - TRANSACTIONS IN SHIRE CALL OPTIONS | \_ |
| PART IV - TRANSACTIONS IN SHIRE PUT OPTIONS | \_ |
| PART V - SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGEMENTS | \_ |
| PART VI – RELEASE | \_ |

### GENERAL INSTRUCTIONS

To recover as a Class Member based on your claims in the Action entitled *Rubenstein v. Gonzalez,* No. 14-cv-9465 (the "Action"),[1] you must complete and, on page \_ hereof, sign this claim form. If you fail to file a properly addressed (as set forth below) claim form, your claim may be rejected and you may be precluded from any recovery from the Net Settlement Fund created in connection with the proposed Settlement. Submission of this claim form, however, does not assure that you will share in the proceeds of the Settlement of the Lawsuit. YOU MUST MAIL YOUR COMPLETED AND SIGNED CLAIM FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, **ON OR BEFORE \_\_\_\_\_ \_\_, 2019**, ADDRESSED AS FOLLOWS:

AbbVie Securities Settlement
Settlement Administrator
c/o Epiq
P.O. Box _____
Portland, OR 97208-\_\_\_\_
www.AbbVieSettlement.com

If you are NOT a Class Member, as defined in the Notice of Proposed Settlement of Class Action, Settlement Hearing and Right to Appear ("Notice"), DO NOT submit a claim form. If you are a Class Member and you did not timely request exclusion, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM.

---

[1] This claim form incorporates by reference the definitions in the Stipulation of Settlement dated _____, 2019 ("Stipulation"), which can be obtained at www.AbbVieSettlement.com.

**CLAIMANT IDENTIFICATION**

If you acquired Shire American Depository Shares ("ADS") or purchased call options or sold put options of Shire (collectively "Shire Securities") between September 29 and October 14, 2014, inclusive. and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, if the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of Shire Securities, which forms the basis of this claim. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S) OR ACQUIRER(S) OF SHIRE SECURITIES UPON WHICH THIS CLAIM IS BASED.

All joint purchasers or acquirers must sign this claim. Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

**CLAIM FORM**

Use Part II of this form entitled "Schedule of Transactions" to supply all required details of your transaction(s). If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

On the schedules, provide all of the requested information with respect to all of your purchases, acquisitions, and sales of Shire Securities which took place between September 29 and October 14, 2014, inclusive, whether such transactions resulted in a profit or a loss. You must also provide all of the requested information with respect to *all* of the Shire Securities you held at the close of trading on October 14, 2014. Failure to report all such transactions may result in the rejection of your claim.

List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

The date of covering a "short sale" is deemed to be the date of purchase of the Shire Security. The date of a "short sale" is deemed to be the date of sale of the Shire Security.

**COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN SHIRE SECURITIES SHOULD BE ATTACHED TO YOUR CLAIM. FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN REJECTION OF YOUR CLAIM.**

NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. All claimants MUST submit a manually signed paper claim form whether or not they also submit electronic copies. If you wish to file your claim electronically, you must contact the Settlement Administrator at info@AbbVieSettlement.com to obtain the required file layout. No electronic files will be considered to have been properly submitted unless the Settlement Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

## PART I – CLAIMANT INFORMATION

Beneficial Owner's First Name      MI      Beneficial Owner's Last Name

Co-Beneficial Owner's First Name      MI      Co-Beneficial Owner's Last Name

Entity Name (if claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address 1

Address 2

City      State/Province      ZIP

Foreign Country

Day Phone      Evening Phone

Email Address

Account Number

Specify one of the following:

☐ Individual(s)   ☐ Corporation   ☐ UGMA Custodian   ☐ IRA   ☐ Partnership   ☐ Estate
☐ Trust
☐ Other _____

Enter Taxpayer Identification Number below for the Beneficial Owner(s).

Social Security No. (for individuals)      Taxpayer Identification No. (for estates, trusts, corporations, etc.)

    or

**PART II - TRANSACTIONS IN SHIRE ADSs**

**Beginning Holdings:**

A. State the total number of shares of Shire ADSs owned at the close of trading on September 28, 2014, long or short (*must be documented*).

**Purchases:**

B. Separately list each and every purchase of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (MMDDYY) | Number of ADS Purchased | Price | Total Cost (Excluding Commissions, Taxes, and Fees) | Transaction Type (P/R)* |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*P – Purchase, R – Received (Transfer-In)

**Sales:**

C. Separately list each and every sale of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (MMDDYY) | Number of ADS Sold | Price | Amount Received (Excluding Commissions, Taxes, and Fees) | Transaction Type (S/D)* |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*S – Sale, D – Delivery (Transfer-Out)

**Ending Holdings:**

D. State the total number of Shire ADSs owned at the close of trading on October 14, 2014 long or short (*must be documented*).

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**PART IV – TRANSACTIONS IN SHIRE CALL OPTIONS**

**1. HOLDINGS AS OF SEPTEMBER 28, 2014** – State the total number of call options of Shire ADSs held as of the close of trading on September 28, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2. PURCHASES/ACQUISITIONS FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** – Separately list each and every purchase/acquisition (including free receipts) of call options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Date of Purchase (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Purchased | Purchase Price Per Call Option Contract | Total Purchase Price (excluding taxes, commissions, and fees) | Insert an "X" if Expired | Insert an "E" if Exercised | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**3. SALES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** – Separately list each and every sale/disposition (including free deliveries) of call options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (MMDDYY) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**4. HOLDINGS AS OF OCTOBER 14, 2014** – State the total number of call options of Shire ADSs held as of the close of trading on October 14, 20154. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (MMDDYY) | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**PART V – TRANSACTIONS IN SHIRE PUT OPTIONS:**

**1. HOLDINGS AS OF SEPTEMBER 28, 2014 –** State the total number of put options of Shire ADSs held as of the close of trading on September 28, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE**
☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2. SALES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014 –** Separately list each and every sale (including free deliveries) of put options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

| Date of Sale (Writing) (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised Insert an "X" if Expired | Exercise Date (MMDDYY) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**3. PURCHASES FROM SEPTEMBER 29, 2014 AND OCTOBER 14, 2014** — Separately list each and every purchase (including free receipts) of put  options of Shire ADSs during the period between September 29, 2014 and October 14, 2014, inclusive, and provide the following information (*must be documented*):

**IF NONE, CHECK HERE** ☐

| Date of Purchase (List Chronologically) (MMDDYY) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts Purchased | Purchase Price Per Put Option Contract | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**4.  HOLDINGS AS OF OCTOBER 14, 2014** – State the total number of put options of Shire ADSs held as of the close of  trading on October 14, 2014. (Must be documented.) If none, write "zero" or "0."

**IF NONE, CHECK HERE** ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (MMDDYY) | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

## PART III: SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this claim form under the terms of the Stipulation described in the Notice. I (We) also submit to the jurisdiction of the Court, with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Action. I (We) agree to furnish additional information to the Settlement Administrator to support this claim if requested to do so. I (We) have not submitted any other claim covering the same purchases, acquisitions or sales of Shire Securities during the relevant period and know of no other person having done so on my (our) behalf.

## PART IV: RELEASE

1. I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge any and all of the Released Defendants' Claims from all Released Claims.

2. 1.20 "Released Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted in any forum that arise out of or are based upon or related in any way to (a) the acquisition or disposition of Shire publicly traded ADSs or options during the Class Period, or (b) the allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation. "Released Claims" includes "Unknown Claims" as defined below.

3. 1.21 "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

4. 1.29 "Unknown Claims" means (a) any and all Released Claims which Plaintiff, Lead Counsel, or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiff, Lead Counsel, or any Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiff, Lead Counsel, or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released

Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

     5. I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

     6. I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in Shire Securities which occurred during the relevant period as well as the number of Shire Securities held by me (us) at the close of trading on October 14, 2014.

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS CLAIM FORM IS TRUE, CORRECT AND COMPLETE.

Signature of claimant (if this claim is being made on behalf of joint claimants, then each must sign)

|  |
|---|

(Signature)

|  |
|---|

(Signature)

|  |
|---|

(capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)
(See item 2 on page 1 for instructions)

Date: | | | | – | | | – | | | | |
     MM     DD     YYYY

**THIS CLAIM FORM MUST BE SUBMITTED NO LATER THAN _____ __, 2019, AND MUST BE MAILED TO:**

AbbVie Securities Settlement
Settlement Administrator
c/o Epiq
P.O. Box _____
Portland, OR 97208-____
www.AbbVieSettlement.com

A claim form received by the Settlement Administrator shall be deemed to have been submitted when posted, if mailed by _____ __, **2019**, and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions. In all other cases, a claim form shall be deemed to have been submitted when actually received by the Settlement Administrator.

### REMINDER CHECKLIST

○  Please be sure to sign this claim form. If this claim form is submitted on behalf of joint claimants, then both claimants must sign.

○  Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.

○  Do NOT use highlighter on the claim form or any supporting documents.

- If you are submitting documents form ... please verify ... manage ... from ... change your address.

EXHIBIT C-3

## Gardy & Notis, LLP and Wolf Haldenstein Adler Freemen & Herz LLP Announce Proposed Settlement in the AbbVie, Inc. Securities Litigation

CHICAGO--(BUSINESS WIRE)— The following statement is being issued by Gardy & Notis, LLP and Wolf Haldenstein Adler Freemen & Herz LLP regarding *Rubinstein v. Gonzalez*, No. 14-cv-9465 (N.D. Ill.) (the "Litigation").

**TO: ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN DEPISITORY SHARES ("ADS") OR PURCHASED CALL OPTIONS OR SOLD PUT OPTIONS OF SHIRE PLC BETWEEN SEPTEMBER 29, 2014 AND OCTOBER 14, 2014 (THE "CLASS").**

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED that pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Illinois that the Litigation has been certified as a class action on behalf of the Class, except for certain persons and entities who are excluded from the Class by definition as set forth in the full printed Notice of Proposed Settlement of Class Action (the "Notice").

YOU ARE ALSO NOTIFIED that Plaintiff in the Litigation on behalf of herself and the other Members of the Class, have reached a proposed settlement of the Litigation with the defendants for the sum of $16,750,000 in cash (the "Settlement"). If the Settlement is approved, it will resolve all claims in the Litigation.

A hearing will be held on DATE, at 9:30 a.m. CT, before the Honorable Robert M. Dow Jr at Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 2303, Chicago, IL 60606, for the purpose of determining: (1) whether the proposed Settlement should be approved by the Court as fair, reasonable and adequate; (2) whether, thereafter, this Litigation should be dismissed with prejudice against the Defendants as set forth in the Stipulation of Settlement dated May X, 2019; (3) whether the Plan of Allocation of Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; and (4) the reasonableness of the application of Lead Counsel for the payment of attorneys' fees and expenses incurred in connection with this Litigation, together with interest thereon (which request may include a request for reimbursement of Plaintiffs' reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995).

You may comment on the Settlement no later than **DATE** and the Court will consider your views at the hearing. You can also appear at the hearing or hire your own attorney at your own cost to represent you at the hearing if you choose. You do not need to attend the hearing to have your comments considered. Details on the process to comment on the Settlement or appear at the hearing are explained in detail on the website or in the detailed Notice.

If you have not received a detailed Notice and Claim Form you may obtain copies by writing to *AbbVie Securities Settlement*, Claims Administrator, c/o ADDRESS, or by downloading this information at www.AbbVieSettlement.com. If you are a Class Member, in order to share in the distribution of the Net Settlement Fund, you must submit a Claim Form no later than **DATE** online, by email or by U.S. mail establishing that you are entitled to a recovery.

You will be bound by any judgment in the Litigation unless you request to be excluded, in writing, postmarked by **DATE**. Please review the Settlement website or the detailed Notice to get instructions on how to exclude yourself.

Any objection to any aspect of the Settlement must be filed with the Clerk of the Court and also delivered by hand or First-Class Mail to each of the following addresses such that it is ***received no later than DATE***:

Jennifer Sarnelli                          Joshua Z. Rabinovitz
Gardy & Notis LLP                      Kirkland & Ellis LLP
Tower 56                                     300 North LaSalle
126 East 56th Street, 8th Floor     Chicago, IL 60654
New York, NY 10022

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**

Contact:
Gardy & Notis, LLP
Jennifer Sarnelli, jsarnelli@gardylaw.com