# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 14-cv-9465 |
| Plaintiffs, | | Honorable Robert M. Dow, Jr. |
| v. | | |
| RICHARD GONZALEZ and ABBVIE INC., | | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Carl Malstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 West Jackson Street, Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 312-212-4401

Mark C. Rifkin
Kate McGuire
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-545-4758

James S. Notis
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509
Fax: 212-905-0508

*Plaintiff's Lead Counsel*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

I. INTRODUCTION AND BACKGROUND ..................................................................... 1

II. ARGUMENT .................................................................................................................... 3

    A. The Proposed Settlement Warrants Final Approval ............................................. 3

        1. Lead Plaintiff and Lead Counsel Adequately Represented the Class ....... 4

        2. The Settlement Resulted from Arm's-Length Negotiations with a Mediator ..................................................................................................... 5

        3. The Settlement Provides a Favorable Benefit to the Class ....................... 7

        4. The Settlement Treats Class Members Equitably Relative to Each Other ........................................................................................................ 11

        5. The Reaction of the Class to the Settlement ........................................... 11

        6. The Class Should Be Certified ................................................................ 12

    B. Notice to the Class Complies with the Preliminary Approval Order and Due Process ............................................................................................................... 12

III. CONCLUSION ............................................................................................................... 13

i

# **TABLE AUTHORITIES**

**Cases**                                                            **Page(s)**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................................. 12

*Equal Emp't Opportunity Comm'n v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985)......................................................................................... 3

*In re Amgen, Sec. Litig.*,
    No. CV 7-25362016 WL 10571773 (C.D. Cal. Oct 25, 2016) .................................... 9

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................ 7

*In re Career Educ. Corp. Sec. Litig.*,
    No. 03 C 8884, 2008 WL 8666579 (N.D. Ill. June 26, 2008)....................................... 6

*In re Mexico Money Transfer Litig. (W. Union & Orlandi Valuta)*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................................... 6

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006).................................................................................... 4

*In re Sears, Roebuck & Co. Front- Loading Washer Prods. Liab. Litig.*,
    No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ........................................ 3

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)................................................................................ 3, 6, 9

*Luna v. Marvell Tech. Grp.*,
    No. C 15-0544, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018).................................. 13

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001).................................................................................... 6

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
    616 F.2d 1006 (7th Cir. 1980)...................................................................................... 3

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)................................. 8, 9

*Schulte v. Fifth Third Bank*,
    805 F.Supp.2d 560 (N.D. Ill. 2011) ............................................................................. 7

*Snyder v. Ocwen Loan Servicing, LLC*,
 No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................................. 5, 7

*Susquehanna Corp. v. Korholz*,
 84 F.R.D. 316 (N.D. Ill. 1979) ........................................................................................................ 6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ......................................................................................................... 4

*Wong v. Accretive Health, Inc.*,
 773 F.3d 859 (7th Cir. 2014) ............................................................................................. passim

**Statutes**

PSLRA ................................................................................................................................................ 12

**Rules**

Fed. R. Civ. P. 23(a)-(b)(3) ............................................................................................................. 12

Fed. R. Civ. P. 23(e)(2) ................................................................................................................. 3, 4

Fed R. Civ. P. 23(e)(2)(A) ............................................................................................................. 4, 5

Fed R. Civ. P. 23(e)(2)(B) ............................................................................................................ 5, 12

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................................... 7, 9, 10

Lead Plaintiff Dawn Bradley ("Lead Plaintiff"), individually and on behalf of the proposed Class, respectfully submits this memorandum of law in support of her motion for Final Approval of Class Action Settlement and entry of the Final Order and Judgement, submitted herewith.[1]

## I. INTRODUCTION AND BACKGROUND

Lead Plaintiff has reached an agreement with AbbVie, Inc. ("AbbVie" or the "Company"), and Richard Gonzalez (collectively, "Defendants") to settle all claims in the above-captioned action (the "Action") in return for a cash payment of $16.75 million. Lead Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 by making misrepresentations and omitting material information in their communications to Shire plc. ("Shire") investors in AbbVie's filings with the SEC.

On July 18, 2014, AbbVie announced it had entered into an agreement to acquire Shire for $54 billion in an inversion transaction (the "Combination"), by which AbbVie would become a foreign corporation to reduce its U.S. taxes.[2] On September 22, 2014, before the Combination was completed, the U.S. Treasury Department issued a notice (the "Treasury Notice") of changes to the tax regulations to dissuade U.S. companies from entering into inversions.[3] On September 29, 2014 (the first day of the Class Period), Gonzalez issued a public letter to Shire's employees (the "Letter") stating he was "more energized than ever" and "more confident than ever" about the Combination. The market and media regarded Gonzalez's statement as a sign that the Combination was moving forward despite the changes announced in the Treasury Notice. Sarnelli

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation of Settlement dated June 18, 2019 (the "Stipulation").
[2] *See* Press Release available at: https://news.abbvie.com/news/recommended-combination-shire-plc-and-abbvie-inc.htm
[3] U.S. Treasury Notice 2014-52 available at: https://www.irs.gov/pub/irs-drop/N-14-52.pdf

1

Decl. at ¶38.[4] Lead Plaintiff alleged that the Letter was materially false and misleading, concealed the Company's active reconsideration of the Combination after the Treasury Notice was issued, and perpetuated AbbVie's prior omissions about the importance of the tax benefits to the Combination. *Id*. at ¶37. Lead Plaintiff alleged that by September 29, 2014, AbbVie and Gonzalez knew or recklessly ignored that the Combination would not proceed because a material portion of the value of the Combination was tied to tax benefits that were almost certainly lost because of the Treasury Notice. *Id*. at ¶¶36-37. Lead Plaintiff alleged that under these circumstances, it was at least reckless, if not outright deceit, to tell the market that Gonzalez was more energized than ever about a Combination that was unlikely to be consummated. On October 14, 2014, AbbVie announced that as a result of the Treasury Notice, its Board was reconsidering its recommendation to shareholders to approve the Combination.[5] In reaction to that news, the price of Shire securities fell. On October 20, 2014, AbbVie announced it reached a termination agreement with Shire to end the Combination and pay Shire a $1.64 billion termination fee.[6]

After protracted discovery, involving multiple disputes requiring the attention of the Court, and full briefing of Lead Plaintiff's motion for class certification, on June 18, 2019, the Parties executed the Stipulation setting forth the full terms of the Settlement. Sarnelli Decl. at ¶¶12-29, 63. The Settlement provides that AbbVie will pay the proposed Class $16.75 million in cash (the "Settlement Amount"). *Id*. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and expenses awarded by the Court, taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to

---

[4] Declaration of Jennifer Sarnelli in Support of Final Approval and Lead Plaintiff and Lead Counsel's Request for Attorney's Fees and Expenses (hereinafter "Sarnelli Declaration" or "Sarnelli Decl.").

[5] Press Release available at: https://www.prnewswire.com/news-releases/announcement-of-notice-to-shire-of-abbvie-board-intention-to-reconsider-recommendation-279213722.html

[6] Press Release available at: https://news.abbvie.com/news/announcement-termination-proposed-abbvie-and-shire-transaction.htm

2

eligible Class members who submit valid Claim Forms ("Authorized Claimants") in accordance with the Plan of Allocation. *Id*. at ¶70.

On July 2, 2019 this Court preliminarily approved the Settlement and certified a Class of:

> all Persons who purchased or otherwise acquired comprised of all persons who purchased or otherwise acquired American Depository Shares or "ADS" or purchased call options or sold put options of Shire between September 29 and October 14, 2014, inclusive. Excluded from the Class are: Defendants and their families, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Class member that validly and timely requests exclusion in accordance with the requirements set by the Court.

*Id*. at ¶2. As set forth herein and the accompanying papers, the Settlement is an outstanding result for the Class, particularly given the stage of the litigation, the total estimated recoverable damages, and the risks of continued litigation.

## II. ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Equal Emp't Opportunity Comm'n v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016).

This Court should grant final approval of the Settlement because it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Federal Rules set forth the factors this Court should consider in making a fairness determination: (1) the class representatives and counsel adequately

3

represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal . . .; and (4) the proposal treats class members equitably relative to each other. *Id*. The Seventh Circuit has held that district courts may consider six additional factors:

> (1)  the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).[7]

### 1. Lead Plaintiff and Lead Counsel Adequately Represented the Class

The Court should first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Lead Plaintiff and Lead Counsel have adequately represented the Class in both their prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Plaintiff's claims are typical of other Class members, and she has no conflicts with the Class. Like all other Class members, Lead Plaintiff has wanted to obtain the largest possible recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Lead Plaintiff has also diligently supervised and participated in the litigation

---

[7] The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments.

4

on behalf of the Class. *See* Declaration of Lead Plaintiff Dawn Bradley ("Bradley Decl.") at ¶¶5-9; Sarnelli Decl. at ¶100.

Moreover, Lead Plaintiff retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. *See* Sarnelli Decl. Ex. ¶7. Lead Counsel has vigorously pursued the claims on behalf of Shire investors and aggressively negotiated a favorable Settlement for the Class through mediation. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding adequacy of representation of the class under 23(e)(2)(A) where named plaintiffs "participated in the case diligently" and class counsel "fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative").

### 2. The Settlement Resulted from Arm's-Length Negotiations with a Mediator

The court should next consider whether the settlement was "negotiated at arm's-length" to ensure the "procedural" fairness of a settlement, including (i) "the opinion of competent counsel";[8] (ii) "stage of the proceedings and the amount of discovery completed"[9]; and (iii) the involvement of a mediator. Fed R. Civ. P. 23(e)(2)(B).

The Parties reached the Settlement after protracted, arm's-length negotiations between experienced and informed counsel and with the assistance of David Murphy, an experienced mediator in complex litigation. Sarnelli Decl. at ¶60. In March 2019, the Parties conducted a formal, all-day, in-person mediation session. *Id.* at ¶61. In advance of the mediation session, the Parties made lengthy and substantive submissions, and the mediation itself involved exchanges

---

[8] *See Wong*, 773 F.3d at 863 (fifth factor).
[9] *See id.* (sixth factor).

of the Parties' respective views on the merits of Lead Plaintiff's claims, Defendants' defenses, and issues related to damages. *Id.* at ¶62. Although the Parties were unable to reach a settlement at the end of the mediation session, they continued to engage in near daily negotiations under the supervision of the Murphy until they reached an agreement on the Settlement. *Id.* at ¶63.

As courts in this Circuit have found, the fact that the Parties reached the proposed Settlement after arm's-length negotiations between experienced and informed counsel creates a presumption of its fairness. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) ("a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate") (citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979)); *In re Mexico Money Transfer Litig. (W. Union & Orlandi Valuta)*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("The court places significant weight on the unanimously strong endorsement of these settlements by [Settling] Plaintiffs' well-respected attorneys.") (citing *Isby*, 75 F.3d at 1200). The assistance of an experienced mediator like Mr. Murphy supports that the Settlement is fair and that the Parties achieved it free of collusion. *See In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (settlement "resulted from arms-length negotiations and voluntary mediation between experienced counsel"); *Wong*, 773 F.3d at 864 (7th Cir. 2014) (settlement "was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated").

Moreover, at the time the Parties reached the Settlement, full fact discovery was completed and Plaintiff's motion for class certification was fully briefed. Sarnelli Decl. at ¶56. When the Parties ultimately executed the Stipulation, Lead Plaintiff and Lead Counsel were well

6

positioned to evaluate their case and the adequacy of the proposed Settlement. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 587-589 (N.D. Ill. 2011) (approving settlement where settlement agreement entitled class counsel to conduct confirmatory discovery that confirmed the fairness of the settlement).

### 3. The Settlement Provides a Favorable Benefit to the Class

The Court should also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," Fed. Civ. P. 23(e)(2)(C), as well as other relevant factors such as: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Wong*, 773 F.3d at 863-64. These factors support approval of the Settlement.

When deciding whether to approve a proposed class action settlement under *Wong* and Seventh Circuit precedent, the primary consideration is "the strength of the plaintiff's case on the merits balanced against the amount offered in settlement." *Snyder*, 2019 WL 2103379, at *6 (citing *Wong*, 773 F.3d at 864). Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 961-64 (N.D. Ill. 2011). The $16.75 million cash recovery here is well within the range of reasonableness considering the legal, factual, and practical risks of continued litigation.

In considering whether to enter into the Settlement, Lead Plaintiff, represented by experienced counsel, weighed the Settlement Amount against the strength of Lead Plaintiff's claims, taking into consideration the risks inherent in certifying a class and proving materiality, scienter, loss causation, and recoverable damages, as well as the expense and likely duration of the Action. Sarnelli Decl. at ¶¶56-57, 30-54. While Lead Plaintiff and Lead Counsel believed the asserted claims were strong, they also recognized the risk that the Court could have ruled in

7

Defendants' favor on a motion for summary judgment, which could have reduced or eliminated the Class's recovery.

Lead Plaintiff alleged that after the Treasury Notice was issued the Combination was no longer financially beneficial to AbbVie and its shareholders and Defendants knew they would need to terminate the Combination in light of the tax law change. Sarnelli Decl. at ¶¶34-37. Following the Treasury Notice, Gonzalez issued the Letter claiming to be "more energized" and "more confident" "then ever" about the Combination, but omitted the Company was already reconsidering the Combination in light of the tax law change.[10] Defendants would argue that they had no duty to inform the market that they were evaluating the Combination until the Company actually made a final decision regarding whether to continue with or terminate the Combination. Defendants might also argue that the Letter was not intended to be a statement about the Combination in light of the Treasury Notice. Sarnelli Decl. at ¶46. Lead Plaintiff would counter that Gonzalez should have recognized that telling the market that he was more energized than ever after the Treasury Notice was issued would be misleading. *Id*. at ¶¶36-37, 49-50. Lead Plaintiff would also argue that Gonzalez's decision not to correct the market's perception was evidence of an intent to deceive. *Id*. at ¶50.

With conflicting arguments and evidence, there is no certainty that Lead Plaintiff would prevail at trial. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."). In the face of substantial risks of further litigation, the $16.75 million recovery achieved by the Settlement represents an outstanding result for the Class. Sarnelli Dec. at ¶54.

---

[10] Letter available at: https://www.sec.gov/Archives/edgar/data/936402/000110465914068977/a14-18836_13425.htm

8

Courts also consider the likely "complexity, length, and expense of the litigation." *Wong*, 773 F.3d at 863; *Isby,* 75 F.3d at 1199. There is no doubt that this securities class action involves complex factual and legal issues. *Retsky*, 2001 WL 1568856, at *2 ("Securities fraud litigation is long, complex and uncertain"). The claims asserted raise many complex issues, as evidenced by the protracted discovery in this case, and the extended briefing on Plaintiff's motion for class certification, which included the filing a sur-reply and sur-sur-reply, in addition to *Daubert* briefing. Sarnelli Decl. at ¶¶12-29. To achieve a litigated verdict in the Action, Lead Plaintiff would have needed to devote a substantial amount of additional time and expense to the case including defending a likely motion for summary judgment; pre-trial evidentiary motions, including concerning the admissibility of expert testimony; a trial; and appeals. *See In re Amgen, Sec. Litig.*, No. CV 7-25362016 WL 10571773, *3 (C.D. Cal. Oct 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). This would pose substantial expense for the Class and delay the Class's ability to recover assuming, of course, that Lead Plaintiff and the Class were ultimately successful on their claims.

The risk, expense, complexity, and likely duration of further litigation support approval of the Settlement. The present value of a certain recovery now, as opposed to the mere chance for a possibly greater one years later, supports approval of a Settlement that eliminates the expense and delay of continued litigation and the risk that the Class could receive no recovery.

In addition, Rule 23(e)(2)(C) requires courts to consider whether the relief provided for the class adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed

9

award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

The procedures for processing Class members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation. Sarnelli Dec. at ¶71. Here, the proceeds of the Settlement will be distributed to Class members who submit eligible Claim Forms with required documentation to the Court-approved Claims Administrator who will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.[11] *Id.* at ¶¶72-77. This type of claims processing is standard and effective is timely providing Class members their equitable distribution in securities class actions.

The relief provided for the Class in the Settlement is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in the accompanying Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Fund plus out-of-pocket expenses, to be paid upon approval by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation.

The Court must also consider any side agreement entered into in connection with Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The only such agreement is the confidential Supplemental Agreement entered into by the Parties that establishes the conditions under which Defendants would be able to terminate the Settlement based on whether exclusion from the Class

---

[11] The Settlement is not a claims-made settlement. If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement based on the number or value of claims submitted.

reach a specified threshold. Sarnelli Dec. at ¶63. This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement.[12]

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Settlement treats Class members equitably relative to one another. Under the Plan of Allocation, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on type of Shire Securities purchased. Sarnelli Decl. at ¶70. Lead Plaintiff will receive precisely the same level of *pro rata* recovery (based on their Recognized Claims as calculated under the Plan of Allocation) as all other similarly situated Shire ADS purchasers.

### 5. The Reaction of the Class to the Settlement

Finally, the Court should consider "the amount of opposition to the settlement" and "the reaction of members of the class to the settlement" when assessing the fairness of the Settlement. *See Wong*, 773 F.3d at 863. In accordance with the Preliminary Approval Order, the Claims Administrator ("Epiq") began mailing copies of the Notice Packet (consisting of the Notice and Claim Form) to potential Class members and nominees on August 6, 2019. Sarnelli Decl. at ¶66. In addition, the Summary Notice was transmitted over the *Business Newswire*. *Id.* The Notice states the essential terms of the Settlement and informs potential Class members of, among other things, their right to opt out of the Class or object to the Settlement, the Plan of Allocation, or Lead Counsel's fee and expense application. *Id*. at ¶65. The deadline set by the Court for Class Members to exclude themselves or object is October 1, 2019. To date, no objections and two

---

[12] At the Court's request, Lead Plaintiff can submit the Supplemental Agreement for *in camera* inspection.

requests for exclusion have been received. *Id*. at ¶69.[13] As provided in the Preliminary Approval Order, Epiq will file a declaration on October 7, 2019 detailing the notice process and any requests for exclusion received. Similarly, Lead Plaintiff will file reply papers on or before October 15, 2019, also after the deadline for requesting exclusion or objecting has passed, that will address all requests for exclusion and any objections received.

### 6. The Class Should Be Certified

In connection with the Settlement, the Parties have stipulated to the certification of the Class for purposes of the Settlement. As set forth in detail in Lead Plaintiff's memorandums of law in support of her motion for preliminary approval of the Settlement, and motion for class certification the Class satisfies all the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* ECF No. 105, 192, 240, 274. None of the facts regarding certification of the Class have changed since Lead Plaintiff submitted her motion for preliminary approval, and there has been no objection to certification. Accordingly, Lead Plaintiff respectfully requests that the Court certify the Class under Rules 23(a) and (b)(3) for the reasons set forth in their earlier memorandum.

### B. Notice to the Class Complies with the Preliminary Approval Order and Due Process

The Notice provided to the Class satisfies all the requirements of due process, the PSLRA, and Rule 23, which require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Notice of a class action settlement is satisfactory if it generally describes

---

[13] Each of the opt-outs received to date are from the plaintiffs that filed individual state court actions in Cook County and were expected to exclude themselves from the Class in this Action.

12

"the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Luna v. Marvell Tech. Grp.*, No. C 15-0544, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018).

Both the substance of the Notice and the method of its dissemination to potential members of the Class satisfy these standards here. As noted above, in accordance with the Court's Preliminary Approval Order, Epiq began mailing copies of the Notice Packet to potential Class members and nominees on August 6, 2019.[14] Sarnelli Decl. at ¶66. In addition, Epiq arranged for the Summary Notice to be transmitted over the *Business Newswire* on August 16, 2019. *Id*. Epiq also established a dedicated Settlement website, www.AbbVieSettlement.com, to provide potential Class members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of other documents such as the Stipulation, Preliminary Approval Order, and Complaint. *Id*. at 68.

This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice transmission over a newswire, and publication on internet websites, was "the best notice . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Career Educ.*, 2008 WL 8666579, at *5 (approving similar notice program).

### III. CONCLUSION

For the reasons stated in this memorandum and in the Sarnelli Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

---

[14] In addition Lead Counsel provided notice directly to counsel for each of the plaintiffs in the state court actions. Sarnelli Decl. at 67, Ex. F.

Dated: September 17, 2019

**GARDY & NOTIS, LLP**

*s/ Jennifer Sarnelli*
James S. Notis
Jennifer Sarnelli
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600

Carl Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 312-214-3110

*Plaintiff's Lead Counsel*