**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MURRAY RUBINSTEIN, *et al.*, Individually and On Behalf of All Others Similarly Situated, ) ) ) | No. 14-cv-9465 |
| ) Plaintiffs, ) ) v. ) ) RICHARD GONZALEZ and ABBVIE INC., ) ) Defendants. ) | Honorable Robert M. Dow, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF**
**EXPENSES AND APPROVAL OF PLAN OF ALLOCATION**

Carl Malstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
111 West Jackson Street, Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 312-212-4401

Mark C. Rifkin
Kate McGuire
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-545-4758

James S. Notis
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509
Fax: 212-905-0508

*Plaintiff's Lead Counsel*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. PRELIMINARY STATEMENT .................................................................................. 1

II. ARGUMENT ................................................................................................................ 3

    A. Lead Counsel's Fee Application Should be Approved ....................................... 3

        1. Awards Made By Other Courts ................................................................ 5

        2. The Quality of Legal Services Rendered ................................................. 6

        3. The Contingent Nature of the Case .......................................................... 6

        4. The Reaction of Lead Plaintiff and the Class ........................................... 7

        5. Lead Counsel's Lodestar Further Confirms the Reasonableness of the Requested Fee ......................................................................................... 8

    B. The Requested Litigation Expenses Should Be Approved ................................. 9

    C. The Plan of Allocation Is Fair and Reasonable ................................................ 12

III. CONCLUSION ........................................................................................................... 13

i

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Abbott v. Lockheed Martin Corp.*,
  No. 06–cv–701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) .................................................. 10

*Abrams v. Van Kampen Funds, Inc.*,
  No. 01 C 7538, 2006 WL 163023 (N.D. Ill. Jan. 18, 2006) ..................................................... 10

*Americana Art China Co., Inc., v. Foxfire Printing and Packaging, Inc.*,
  743 F.3d 243 (7th Cir. 2014) ..................................................................................................... 8

*Arenson v. Bd. of Trade of Chicago*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................................... 6

*Beane v. Bank of N.Y. Mellon*,
  No. 07 Civ. 09444, 2009 WL 874046 (S.D.N.Y. Mar. 31, 2009) ............................................ 10

*Beesley v. Int'l Paper Co.*,
  No. 3:06–cv–703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ................................................... 6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................................. 3

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira*,
  No. 11-cv- 08332-AJS, slip. op. (N.D. Ill. Aug. 5, 2014) ......................................................... 5

*Dalton v. Jones, Bird & Howell*,
  993 F.2d 1549 (7th Cir. 1993) ................................................................................................... 9

*Duncan v. Joy Global Inc., et al.*,
  No. 16-cv-1229-pp, slip op. (E.D. Wis. Dec. 27, 2018) .......................................................... 12

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994) ....................................................................................................... 4

*Florin v. Nationsbank of Ga., N.A.*,
  60 F.3d 1245, 1247 (7th Cir. 1995) ........................................................................................... 7

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ..................................................................................................... 4

*Gastineau v. Wright*,
  592 F.3d 747 (7th Cir. 2010) ..................................................................................................... 8

ii

*Goldsmith v. Tech. Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .................................................. 5

*Great Neck Capital Appreciation Inv. P'Ship, L.P., v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .............................................................................................. 12

*Halverson v. Convenient Food Mart, Inc.*,
  458 F.2d 927 (7th Cir. 1972) ...................................................................................................... 4

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...................................................................................................... 8

*Heder v. City of Two Rivers*,
  255 F. Supp. 2d 947 (E.D. Wis. 2003) ....................................................................................... 9

*In Re Akorn, Inc. Sec. Litig.*,
  No. 15-cv-1944 (ND Ill Jun. 5, 2018) ...................................................................................... 12

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ..................................................................................... 11

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................................................. 4, 7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 09–cv–3690, 2015 WL 753946 (N.D. Ill. February 20, 2015) ........................................ 4, 5

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02–CV–3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................ 4

*In re Groupon, Inc. Sec. Litig.*,
  2016 WL 3896839 (N.D. Ill. July 13, 2016) .............................................................................. 5

*In re Household Int'l, Inc. ERISA Litig.*,
  No. 02-C-7921, 2004 WL 7329846 (N.D. Ill. Nov. 22, 2004) ................................................... 9

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................. 12

*In re ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*,
  No. 1:14-cv-01599, 2016 WL 1162534 (S.D. Ind. Mar. 24, 2016) ......................................... 11

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09 C 7666, slip op. (N.D. Ill. Jan. 22, 2014) ....................................................................... 6

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ........................................................................................... 5, 7, 10

iii

*Kaplan v. Houlihan Smith & Co.*,
  No. 12 C 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) .................................................. 10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ................................................................................................................ 9

*Smith v. Vill. of Maywood*,
  17 F.3d 219 (7th Cir. 1994) ..................................................................................................... 9

*Montgomery v. Aetna Plywood,*
  231 F.3d 399 (7th Cir. 2000) .................................................................................................. 10

*Montgomery v. Aetna Plywood,*
  532 U.S. 1038 (2001) ............................................................................................................. 10

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
  No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................. 5

*Roth v. AON Corp.*,
  No. 04-C-6835, slip op. (N.D. Ill. Nov. 18, 2009) .................................................................... 6

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
  574 F.3d 852 (7th Cir. 2009) ................................................................................................... 8

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) .................................................................................................. 10

*Silverman v. Motorola, Inc.*,
  No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ................................................... 10

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ................................................................................................... 5

*Williams v. Rohm & Haas Pension Plan*,
  No. 4:04–CV–0078, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) ......................................... 9

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ................................................................................................... 9

*Wong v. Accretive Health, Inc.*,
  No. 1:12–cv–03102, 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) .......................................... 9

**Statutes**

15 U.S.C. §78u-4(a)(4) ..................................................................................................................... 11

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Lead Plaintiff respectfully submits this memorandum in support of her motion for (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) reimbursement of $530,133.17 for Lead Counsel's litigation expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action; (iii) reimbursement of $9,937.20 to Lead Plaintiff for her costs and expenses directly related to her representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (iv) and approval of the proposed Plan of Allocation.

## I.  PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a $16.75 million cash payment. The proposed Settlement represents an excellent result for the Class. It provides meaningful and immediate compensation while avoiding the risks and delay of continued litigation.

The $16.75 million payment was achieved in the face of numerous challenges. To begin with, there were significant obstacles to establishing Defendants' liability in this case. Sarnelli Decl.[1] at ¶¶30-54. Defendants presented evidence that may have led a jury to determine that they did not act with scienter. *Id*. Even if Lead Plaintiff was able to establish scienter, there was still a risk that the Court could adopt a damage model that could have eliminated the Class's potential recovery. *Id*. at 53. As noted in the Sarnelli Declaration, the litigation risks were substantial.

In order to achieve this recovery, Lead Counsel made significant efforts and litigated aggressively on a fully contingent basis, without any guarantee of payment, against capable defense counsel. Lead Counsel pursued this litigation from its outset by, among other things, (i)

---

[1] Declaration of Jennifer Sarnelli in support of Lead Plaintiff's Motions for Approval Of Class Action Settlement and an Award of Attorneys' Fees, Reimbursement of Expenses and Approval of Plan of Allocation (hereinafter "Sarnelli Declaration" or "Sarnelli Decl.").

1

conducting a comprehensive investigation of the alleged fraud; (ii) researching, drafting, and filing the Class Action Complaint and the Amended Class Action Complaint (the "Amended Complaint"); (iii) conducting extensive research and drafting briefing in opposition to Defendants' two rounds of motions to dismiss; (iv) consulting with experts and consultants regarding loss-causation and damages; (v) engaging in discovery, including numerous discovery disputes that requited the attention of the Court, and completing all merits-related document and deposition discovery; (vi) fully briefing Lead Plaintiff's motion for Class Certification, including a sur-reply and sur-sur-reply; (vii) fully briefing Defendants' *Daubert* motion and (viii) conducting extensive, arm's length settlement negotiations, which included a formal full-day mediation session overseen by an experienced mediator, followed by additional negotiations under the supervision and guidance of the mediator. Sarnelli Decl. at ¶¶6-29, 56-63.

As compensation for Lead Counsel's considerable efforts on behalf of the Class and the risks of nonpayment they faced in bringing and prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 30% of the Settlement Fund. The requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. The requested fee also represents a modest multiplier of 1.85 on Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions. *Id*. at ¶86. In addition, the expenses for which Lead Counsel seeks reimbursement were reasonable and necessary for the successful prosecution of the Action. *Id*. at ¶¶90, 93-99. The requested fee has the full support of the Lead Plaintiff. *See* Declaration of Dawn Bradley ("Bradley Decl.") at ¶13. Lead Plaintiff actively supervised the Action and endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.* at ¶¶2, 5-8, 12-13.

2

In addition, the Notice mailed to potential Class members in compliance with this Court's Preliminary Approval Order advised potential Class members that Lead Counsel would apply for an award of attorney's fees in an amount not to exceed 30% of the Settlement Fund and for reimbursement of litigation expenses (including the reasonable costs and expenses of Lead Plaintiff). Sarnelli Decl. at ¶101. The fees and expenses sought by Lead Counsel are within the amounts set forth in the Notice. *Id*. at ¶¶80-102. While the deadline set by the Court for Class members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requests for fees and expenses have been received. *Id*. at ¶69.[2]

In light of the excellent recovery obtained, the time and effort devoted by Lead Counsel to the Action, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved by the Court. In addition, the costs and expenses incurred by Lead Counsel and Lead Plaintiff are reasonable in amount and were necessarily incurred in the successful prosecution of the Action, and they too should be approved.

**II.  ARGUMENT**

**A.  Lead Counsel's Fee Application Should be Approved**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Seventh Circuit has similarly recognized that "[w]hen a case results in the creation of a common fund for

---

[2] The deadline for the submission of objections is October 1, 2019. Should any objections be received, Lead Counsel will address them in its reply papers, which Lead Counsel will file with the Court on or before October 15, 2019.

the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A. ("Florin I")*, 34 F.3d 560, 563 (7th Cir. 1994). Awarding attorneys' fees from a common fund "serve[s] to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (internal quotations and citation omitted); *see also Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972) ("Substantial counsel fees may even be an acceptable incentive to encourage forceful prosecution of cases[.]").

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. The Seventh Circuit has strongly endorsed the percentage method, pursuant to which fees are awarded as a percentage of the common fund. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09–cv–3690, 2015 WL 753946, at *3 (N.D. Ill. February 20, 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district"). The Seventh Circuit also has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin I*, 34 F.3d at 566; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to award a percentage "than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth").

The Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005), the Court considered the following factors: (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600; *see also Synthroid*, 264 F.3d at 721 (reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). These factors strongly support the fee requested here.

### 1. Awards Made By Other Courts

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record . . . and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class action cases like this one, courts within the Seventh Circuit have held that percentages in the range of 33 1/3% to 40% of the recovery are appropriate. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Goldsmith v. Tech. Sols. Co.,* No. 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery."). The 30% fee requested here is consistent with fee awards that courts in the Seventh Circuit have made in similar cases with comparable recoveries.[3]

---

[3] *See*, also *e.g.*, *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement fund); *In re Dairy Farmers of America*, 2015 WL 753946, at *16 (awarding 33% of $46 million common fund); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira*, No. 11-cv- 08332-AJS, slip. op. at 1-2 (N.D. Ill. Aug. 5, 2014), ECF No. 207 (awarding 30% of $60 million

5

### 2. The Quality of Legal Services Rendered

From the inception of the Action, Lead Counsel tirelessly pursued the litigation to obtain the maximum recovery for the Class. This case required a thorough understanding of complicated issues and international law, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation. Sarnelli Dec. at ¶90. Lead Counsel practices extensively in the field of complex class action litigation and has litigated these types of actions in courts across the country. *See Id*. at ¶7. As a result of these efforts, Lead Counsel obtained an excellent result for the Class particularly in light of the risks of continued litigation. *Id*. at ¶¶4-5.

The quality of opposing counsel is also an important factor in evaluating the work performed by Lead Counsel. *Arenson v. Bd. of Trade of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Lead Counsel were opposed in this case by the nationally known and highly capable law firm of Kirkland & Ellis LLP, who mounted a zealous defense of the claims, raised complex issues in connection with Lead Plaintiff's motion for class certification, and were expected to seek summary judgment at the close of expert discovery. *Id*. at 88. Lead Counsel pushed back at every turn ensuring the Class received the best possible representation. *Id*. The ability of Lead Counsel to obtain a favorable result for the Class evidences the quality of counsel's work and weighs in favor of the Court granting the attorneys' fees sought here.

### 3. The Contingent Nature of the Case

Lead Counsel litigated this Action on a fully contingent basis. The contingent nature of representation has been recognized as a critical factor in determining counsel's fees. *See Synthroid*

---

settlement fund) Ex. I to Sarnelli Decl.; *Beesley v. Int'l Paper Co.*, No. 3:06–cv–703, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding 33 1/3% of $64 million settlement fund) ) Ex. J to Sarnelli Decl.; *Roth v. AON Corp.*, No. 04-C-6835, slip op. at 1 (N.D. Ill. Nov. 18, 2009), ECF No. 220 (awarding 31% of $30 million settlement fund) ) Ex. K to Sarnelli Decl.

*Mktg. Litig.*, 264 F.3d at 721 ("The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear."); *In re Continental*, 962 F.2d at 569 (holding it was reversible error not to compensate for risk of nonpayment). While Lead Counsel believes that Lead Plaintiff's claims are meritorious, Lead Counsel recognized that there were significant hurdles that Lead Plaintiff would have had to overcome to prevail in this Action. Sarnelli Decl. at ¶¶30-54. There were significant risks in proving Lead Plaintiff's case, not the least of which was that this Court had already decided that the claim as pleaded was not an outright fraud, but rather was a recklessness claim, setting a high bar for Lead Plaintiff. *Id.*

In light of these uncertainties regarding the outcome of the case, it is clear that Lead Counsel was never "assured of a paycheck." *See Florin v. Nationsbank of Ga., N.A.* ("*Florin II*"), 60 F.3d 1245, 1247 (7th Cir. 1995). Unlike Defendants' counsel, who are paid whether they win or lose, Lead Counsel have thus far received no compensation for their considerable efforts on behalf of the Class, and any award of fees or expenses to counsel has always been entirely dependent on their success in obtaining a common fund for the Class. Sarnelli Dec. at ¶¶89, 91.

### 4. The Reaction of Lead Plaintiff and the Class

Lead Plaintiff who was actively involved in the prosecution of the litigation and settlement of the Action and has actively supervised the work of counsel, has approved the requested fee. *See* Bradley Decl. at. ¶¶2, 5-8, 12-13. Lead Plaintiff purchased approximately $440,000 worth of Shire ADRs during the Class Period, which accounted for a substantial portion of her retirement savings. *Id.* at ¶4. This endorsement of the fee by Lead Plaintiff as fair and reasonable supports approval of the fee. And, while the deadline has not passed for Class member objections, no objections have been received to date. Sarnelli Decl. at ¶69.

7

### 5. Lead Counsel's Lodestar Further Confirms the Reasonableness of the Requested Fee

While the percentage method is preferred in the Seventh Circuit, the lodestar/multiplier method as a cross-check can confirm the appropriateness of the requested fees. The lodestar/multiplier method entails multiplying the number of hours each attorney or other professional expended on the case by his or her hourly rate to derive the lodestar figure. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 856-57 (7th Cir. 2009). Courts then typically adjust the lodestar, by applying a multiplier, to take into account the various factors in the litigation that affect the reasonableness of the requested fees, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748 (citing *Schlacher*, 574 F.3d at 856-57). Courts must also consider the risk taken by class counsel that they will recover nothing for their time and expenses. *See Americana Art China Co., Inc., v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 248 (7th Cir. 2014). In complex contingent litigation such as the Action, courts in the Seventh Circuit regularly apply risk multipliers between 1.0 and 4.0. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) (noting that multipliers between 1.0 and 4.0 have been approved).

As detailed here and in the Sarnelli Declaration, Lead Counsel spent 3,828.40 hours prosecuting the Action for the benefit of the Class through August 31, 2019. Sarnelli Decl. at ¶86. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each

8

professional by his or her current hourly rate,[4] is $2,755,862.75. Thus, the requested fee of 30% of the Settlement Fund, which equates to $5,025,000 million, represents a multiplier of approximately 1.82 to lodestar. *Id*.

The requested 1.82 multiplier is well within the range of multipliers commonly awarded in securities class actions and other comparable litigation. *See, e.g.*, *Wong v. Accretive Health, Inc.*, No. 1:12–cv–03102, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (awarding multiplier of approximately 4.7); *Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) (awarding $43.5 million fee on lodestar of $7.43 million, for multiplier of 5.85); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-C-7921, 2004 WL 7329846, at *1 (N.D. Ill. Nov. 22, 2004) (awarding multiplier of approximately 4.65).

Lead Counsel's requested fee award is well within the range of what courts in this Circuit commonly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### B. The Requested Litigation Expenses Should Be Approved

In addition to attorneys' fees, Lead Counsel also seeks reimbursement of the litigation expenses incurred by Lead Counsel. It is well-settled that attorneys who have created a common fund for the benefit of a class are entitled to reimbursement for their expenses incurred in creating the fund. *See, e.g.*, *Dalton v. Jones, Bird & Howell*, 993 F.2d 1549 (7th Cir. 1993) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services and reimbursement of their out-of-pocket expenses."). As set forth in detail in the Sarnelli

---

[4] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflationary losses, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use . . . current rates . . . as acceptable compensation for the delay in payment of fees."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 958 (E.D. Wis. 2003) ("awarding fees at the current rate . . . is an accepted method").

9

Declaration, Lead Counsel collectively incurred $530,133.17 in litigation expenses in connection with the institution, prosecution, and settlement of the Action. *Id.* at 93.

The expenses for which Lead Counsel seeks reimbursement are all reasonable, necessary, and directly related to the prosecution of the Action. *Id*. at 93-99. These expenses include, among others, expert fees, mediation fees, travel-related costs, copying costs, and postage and delivery expenses.[5] *Id*. The most significant costs were in connection with expert fees. *Id*. at ¶95. In addition, this case involved frequent travel between Chicago and New York for approximately twenty court appearances and ten depositions. *Id*. at ¶96. All of these expenses were reasonably and necessarily incurred, and are of the sort that would typically be charged to paying clients in the marketplace. *See Abbott v. Lockheed Martin Corp.*, No. 06–cv–701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").[6] These expense items were charged separately by Lead

---

[5] Counsel did not include charges for online research, consistent with this Circuit's precedent that such costs are not recoverable where attorneys' fees are based on the percentage of a common fund. *See Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012), *aff'd sub nom. Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013); *see also Montgomery v. Aetna Plywood,* 231 F.3d 399, 409–410 (7th Cir. 2000), *cert. denied,* 532 U.S. 1038 (2001) ("As a form of attorneys' fees, the charges associated with [computer] research are not separately recoverable expenses. When a court uses the percentage-of-recovery method of calculating attorney's fees, such charges are simply subsumed in the award of attorneys' fees."); *Abrams v. Van Kampen Funds, Inc.,* No. 01 C 7538, 2006 WL 163023, at *5 (N.D. Ill. Jan. 18, 2006).

[6] *See Synthroid*, 264 F.3d at 722 (explaining the appropriateness of considering what the private market would bear in determining the reasonableness of litigation expenses); *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801, *4 (N.D. Ill. June 20, 2014) (awarding expenses in class action including copying costs, *pro hac vice* admission fees, overnight shipping fees, travel and meal expenses, and mediation fees); *see also Beane v. Bank of N.Y. Mellon*, No. 07 Civ. 09444, 2009 WL 874046, *9 (S.D.N.Y. Mar. 31, 2009) (awarding as "properly chargeable to the Settlement Fund," because they "are the type for which 'the paying, arms' length market' reimburses attorneys," reimbursement for court fees, photocopying and reproduction, deposition transcripts, postage and messenger services, transportation and lodging, telephone bills, and expert and electronic litigation database support).

10

Counsel, and such charges were not duplicated in the firms' hourly rates. *Id*. at Ex. G-H. Reimbursement of these expenses is fair and reasonable.

In connection with its request for reimbursement of litigation expenses, Lead Counsel also seeks reimbursement of $9,937.20 in costs and expenses incurred by Lead Plaintiff directly related to her representation of the Class. *See* Bradley Decl. at ¶¶6-12, 14-15. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Lead Plaintiff took an active role in the litigation and has been fully committed to pursuing the Class's claims since they became involved in the litigation. *Id.* at ¶¶5-9. These efforts, which included reviewing pleadings and briefs filed in the Action, communicating regularly with Lead Counsel regarding case strategy and developments, being deposed, consulting with Lead Counsel regarding settlement negotiations, and evaluating and approving the Settlement, required Lead Plaintiff to dedicate time they otherwise would have devoted to their regular duties. *Id.* The requested reimbursement amounts are based on the number of hours that Lead Plaintiff committed to these activities multiplied by a reasonable hourly rate. *Id*. at ¶10. The reimbursement amounts requested, $9,937.20, is reasonable and justified under the PSLRA and Courts have routinely granted similar awards to plaintiffs for reimbursement of expenses in similar cases. *See, e.g.*, *In re ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*, No. 1:14-cv-01599, 2016 WL 1162534, at *5 (S.D. Ind. Mar. 24, 2016) (awarding lead plaintiff $10,000 for reasonable costs and expenses directly related to its representation of the settlement Class, including for lost wages); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (approving $5,000 for each class representative, despite the lack of any formal discovery, for "their role in reviewing, considering, and approving the Settlement

11

Agreement and fee application, and especially their willingness to take a more-active role if necessary").[7]

The Notice informed potential Class members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $750,000, and costs and expenses to Lead Plaintiff directly related to her representation of the Class not to exceed $10,000. The total amount of expenses requested by Lead Counsel of $530,133.17 and $9,937.20 in costs incurred by Lead Plaintiff are below the amounts listed in the Notice. To date, there has been no objection to the request for expenses.

### C. The Plan of Allocation Is Fair and Reasonable

Lead Plaintiff also seeks final approval of the proposed Plan of Allocation for the Settlement proceeds. Approval of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole—the plan must be "fair and reasonable." *See Retsky*, 2001 WL 1568856, at *3; *Great Neck Capital Appreciation Inv. P'Ship, L.P., v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The plan of allocation need only have a reasonable basis, particularly if recommended by experienced class counsel. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Lead Plaintiff's damages expert developed the proposed Plan of Allocation, which is set

---

[7] A number of unreported cases in this jurisdiction further support Plaintiff's application: *In Re Akorn, Inc. Sec. Litig.*, 1:15-cv-1944 Memorandum Opinion and Order (N.D. Ill Jun. 5, 2018) ("Given the substantial time spent on this litigation for the benefit of the class as a whole, the requested incentive awards of $10,000 per Named Plaintiff are appropriate.") Ex. L to Sarnelli Decl.; *Duncan v. Joy Global Inc., et al.*, No. 16-cv-1229-pp, slip op. at 2 (E.D. Wis. Dec. 27, 2018), ECF No. 79 (awarding two lead plaintiffs amounts ranging from $2,400 to $23,000 for reimbursement of reasonable costs and expenses, including lost wages) Ex. M to Sarnelli Decl.

forth in the mailed Notice, with the assistance of Lead Counsel. Sarnelli Decl. at ¶70. The Plan calculates a "Recognized Loss Amount" of $50.69 for each purchase or acquisition of Shire ADS during the Class Period. *Id*. at 76.[8] In addition, the Plan of Allocation accounts for losses on behalf of Class members that purchased option contracts through the use of tables appended to the Notice that set out the inflation per share for each such contract. *Id*. at 77. The Net Settlement Fund will be allocated to Class members who submit valid claims on a *pro rata* basis based on the relative size of their claims and subject to the weighting analysis of ADS as opposed to options. *Id*. at ¶¶70-78. The proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class members who suffered losses as a result of the conduct alleged in the Complaint. *Id*. To date, no objections to the Plan of Allocation have been received. *Id.* at ¶79. For all of these reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.

### III.    CONCLUSION

Lead Counsel respectfully requests that the Court: (i) award attorneys' fees in the amount of 30% of the Settlement Fund; (ii) award $530,133.17 as reimbursement for the reasonable litigation expenses that Lead Counsel incurred in connection with the prosecution and resolution of the Action; (iii) award $9,937.20 to Lead Plaintiff as reimbursement for her costs and expenses directly related to their representation of the Class, and (iv) approve the proposed Plan of Allocation.

---

[8] This Recognized Loss Amount accounts for the limitation of damages based on the 90-day look-back period. *See* 15 U.S.C. §78u-4(e).

Dated: September 17, 2019    **GARDY & NOTIS, LLP**

*s/ Jennifer Sarnelli*
James S. Notis
Jennifer Sarnelli
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600

Carl Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 312-214-3110

*Plaintiff's Lead Counsel*

14